A92A2353. GARCIA v. THE STATE.
(428 SE2d 666)

BIRDSONG, Presiding Judge.
Manuel Garcia appeals his judgment of conviction of trafficking in cocaine by knowingly possessing more than 400 grams of a mixture with a purity of more than 10 percent cocaine, and his sentence. He enumerates two errors. *Held*:

1. It is asserted the trial court erred in denying appellant's suppression motion because the search of his vehicle was an unreasonable search in violation of the Fourth Amendment, and appellant never consented either to the original or to a second search. In support of this enumeration, appellant argues that the scope of the police search exceeded the scope of appellant's consent.

(a) Consent searches are valid but where the State relies upon consent, it has the burden to demonstrate from all the circumstances that the consent was voluntary and not the result of duress or coercion, express or implied. If it appears that a valid consent was given to search, such consent eliminates the need for either probable cause or a search warrant. In determining whether a search and seizure was reasonable, an appellate court can consider all relevant evidence of record, wherever located, including that adduced at a suppression

hearing before trial and that adduced during trial. *Newsome v. State*, 192 Ga. App. 846 (1) (386 SE2d 887). Moreover, the trial court's decision, express and implied, as to credibility and disputed questions of fact at a suppression hearing must be accepted on appeal unless clearly erroneous. See generally *State v. Davis*, 261 Ga. 225, 226 (404 SE2d 100); *Santone v. State*, 187 Ga. App. 789, 790 (1) (371 SE2d 428). However, when the operative facts are undisputed and the trial court merely applies a conclusion of law to these undisputed facts to determine search legality, an appellate court owes no particular deference to such legal conclusion. See generally *State v. McBride*, 261 Ga. 60, 65-66 (401 SE2d 484) (Hunt, J., concurring specially); *Davis*, supra at 226, n. 1.

(b) In this case, a police officer observed a female on the road who appeared to be upset and was impeding the flow of traffic by attempting to flag down passing cars. The woman told the officer that her boyfriend, appellant Manuel Garcia, had ingested narcotics and was behind the nearby church. Backup was called. The female further stated that appellant had threatened to kill her because she was going to tell that he had a lot of cocaine in his car, although he did not have any weapons. The officers were also told that appellant "had been selling what [the woman] believed to be cocaine on their trip from Florida up to Georgia." Two officers went to the church parking lot and found appellant in his car. Appellant denied that he had drugs or weapons in his car, or that he had threatened to kill the woman.

One of the officers then asked appellant "do you mind if [the two officers] search your vehicle," and appellant replied, "no, I don't." The officer again stated to appellant, "you do not mind if we search your vehicle," and appellant responded, "no, go ahead." Appellant did not appear to have any problem understanding and responding to these questions, and did not appear to be under the influence of alcohol or drugs. Appellant was then asked to move away from the car and the two officers proceeded to search the vehicle, but no drugs were found. One of the officers continued to search the car and never stopped searching, while the other went back to the patrol car and was immediately asked by the woman if he found "it." The officer who went back to the patrol car then asked the woman where the cocaine was located and she said "behind the radio panel." She further said "the panel will fall off"; "the panel pulls off and it's behind the radio panel in a white plastic bag." The officer returned to the car and informed the other officer who was still searching the vehicle that "the drugs were hidden in the radio."

There exists some apparent inconsistency as to the facts testified to by the officers conducting the search regarding the manner in which the cocaine was found. The record reflects the following somewhat varying descriptions as to the manner in which the search was

conducted: The search continued, and the officer who had spoken to the woman began "messing around with the radio panel. The radio panel just fell off in [his] hand, it wasn't even attached. [He] didn't have to pry it or anything." The officer applied no force "at all" to the panel before it came loose; when he started touching the panel it fell off. The officer touched the radio panel and found it to be loose; he then tugged or pulled on it and it came out of the dashboard. The radio was loose in the dashboard, and when the officer grabbed the knob and lifted it, the radio came out.

The police found 458 grams of cocaine with a purity of 100 percent behind the radio in the dashboard of appellant's car. The street value of the cocaine was at least $250,000-$300,000. After the drugs were found, the search continued for weapons to no avail; appellant was arrested and charged with trafficking in cocaine.

The trial record and the motion to suppress hearing record contain evidence that at no time appellant withdrew or attempted to withdraw his consent to search. He never asked the police to stop their search; he never indicated that he did not want the police to search the vehicle in any particular manner or in any particular location thereof; and appellant never indicated that the police were taking too long to search or were not to look in any particular place in the vehicle. Appellant was standing close enough to the car so that if he had objected to the manner in which the search was conducted the officer would have heard him. However, appellant was never informed that he could refuse to consent to a search or that he could drive away before the search; and, his consent was obtained after he was advised he could be a potential suspect in a case.

However, at trial appellant testified the officer asked "if he could look in my car, look through my car," and that appellant told him yes. This is what appellant understood the officer to say, although the officer could have said something else. Appellant agreed to the officer looking through his car because he thought he had no other choice; he was not told otherwise. Nor was appellant told that he was free to leave. Appellant believed he was not free to leave because the police car was right behind his and they never said he could leave. Appellant admitted in open court by affirmative response that he had freely and voluntarily consented to let the police go through his car, that is, "to search [his] car." Appellant also testified that as the search was conducted he was left with some other officers behind the police car.

Following the suppression motion hearing, the trial court found that the only evidence before the court was that the search was consensual, and that the issue of consent was not disputed by any evidence before the court. At the conclusion of appellant's testimony, defense counsel made an oral motion for reconsideration of its suppression motion in view of appellant's testimony that the consent to

search was not given voluntarily and freely, and moved for a directed verdict on that basis. The motion was overruled (denied).

(c) We find that *State v. Diaz*, 191 Ga. App. 830, 832 (2) (383 SE2d 195) (consent merely granted permission to look inside vehicle and not to seize and examine contents of packages in the car) and *State v. Corley*, 201 Ga. App. 320 (411 SE2d 324) are distinguishable from this case. Compare *Thomas v. State*, 201 Ga. App. 292, 293 (1) (410 SE2d 786) and *Gossett v. State*, 199 Ga. App. 286, 287 (1c) (404 SE2d 595). Also, unlike *Diaz* this case does not involve the examination of a closed container within the car. Significantly, the record in the case at bar establishes that appellant consented to the search of his automobile and did not limit such consent merely to looking inside without authorizing the touching or moving of any of the interior components thereof. Further, appellant admitted in open court, as above discussed, that he had freely and voluntarily consented for the police "to [the] search" of his car. Compare *Bruce v. State*, 191 Ga. App. 580, 581 (2) (382 SE2d 367). Additionally, assuming arguendo, appellant had limited the scope of search of the police merely to "go through [his] car," the conduct of the police and the minor physical force, if any, used in removing the radio panel did not exceed the reasonable parameters of such consent as a matter of law.

(d) Pretermitting whether there exists a dispute of facts in this case (compare *Davis*, supra with *McBride*, supra (Hunt, J., concurring specially)), we find without deference to any express or implied finding of fact made by the trial court that the evidence of record supports the ruling of the trial court that appellant's consent to search was freely and voluntarily given. The State has carried its burden of proof of voluntariness of consent within the meaning of *Newsome*, supra. Moreover, we do not find appellant's implied contention that he subsequently withdrew or modified his consent to search to be supported by evidence of record. " 'Once a voluntary consent is legally obtained, it continues until it either is revoked or withdrawn.' " *Calixte v. State*, 197 Ga. App. 723, 726 (2) (399 SE2d 490). The trial court did not err in denying appellant's motion to suppress.

2. It is asserted the trial court erred in denying appellant's motion for mistrial after the prosecutor made factual assertions not in evidence, during closing argument, that appellant had been selling drugs from Miami to Atlanta. (As closing argument was not transcribed, this court basically is limited to an examination of the reported statements of the State, the defense, and the trial judge following appellant's objection to the prosecutor's argument.)

Prior to trial, the trial court granted appellant's motion in limine to preclude the State from presenting any evidence that appellant had been selling cocaine as he traveled from Miami "up the road" to Georgia, as such evidence would tend to put appellant's character im-

permissibly in evidence. However, the trial court did leave open the issue of whether such evidence might subsequently become admissible in rebuttal. It appears from the arguments reported in the out-of-court hearing following appellant's objection that, during closing argument, the State in fact argued in some context that appellant had been selling drugs all the way from Miami to Atlanta. In the out-of-court hearing, the trial court stated on the record, without contradiction by appellant or the State, that "I don't think [appellant's] objection went to [the prosecutor's] saying [appellant] was a dope dealer. *You said that early* on in your argument; *he didn't object then.* . . . But do you have a right to argue that he sold cocaine between Miami and Atlanta? That's the question." (Emphasis supplied.) The trial court emphasized to counsel that it had ruled such evidence was inadmissible, and that "the State then argues something that's not in evidence and under the guise that this is a reasonable inference to be drawn from the evidence. I'd feel better about the argument had we not already gone through all this on the record and I had ruled that it wasn't admissible. . . . And there is not any evidence in this case that he sold anything." Thereafter, the trial court recalled the jury and gave them a curative instruction to the effect, inter alia, that there was not one scintilla of evidence that appellant sold any cocaine between Miami and Atlanta, that the jury was to disregard the prosecutor's statement because it is not evidence in this case, and that the prosecutor was not to make any other statements as to matters not in evidence or from which no reasonable inference could be drawn. The trial court then polled the jury as to whether there was any juror who could not follow his curative instruction, and received no response from any juror indicating that the instruction could not be followed. Immediately thereafter, appellant took "exception to the court's attempt to cure this problem," but elected not to renew the motion for mistrial. We find appellant's enumeration of error to be without merit for the following reasons.

(a) Notwithstanding the "exception" taken to the curative instruction of the trial court, appellant waived the mistrial issue by failing to renew the motion for mistrial after the curative instruction was given. *Harris v. State*, 202 Ga. App. 618, 620 (3b) (414 SE2d 919). While the taking of an exception to a curative instruction may serve as added insurance to preserve an issue regarding the effectiveness of such instruction (see *Harris*, supra at 619-620 (3a)), an exception taken to a curative instruction given subsequent to a timely mistrial motion will not serve to preserve the mistrial motion issue on appeal, because "[b]y having failed to renew timely the mistrial motion after [a] curative instruction, appellant has failed to preserve these issues for appellate review." Id. at 620 (3b).

(b) Assuming arguendo the mistrial error was preserved on ap-

peal, the record before us fails to include the actual argument of counsel so that we may examine the exact words spoken and their context, and fails to provide sufficient basis to find that the trial court breached its discretion (see generally *Allen v. State*, 259 Ga. 303, 304 (2) (379 SE2d 513)) giving a curative instruction to the jury. Further, the trial court's poll of the jury reflects that no juror believed he or she could not follow the curative instruction. Moreover, qualified jurors, under oath, are presumed in the absence of clear contrary evidence to follow the procedural directives of and to respond honestly to questions of the trial judge. *Dykes v. State*, 191 Ga. App. 879, 880 (383 SE2d 210).

(c) Additionally, the record reveals the trial court stated, without challenge of counsel, that the State had earlier argued appellant was a drug dealer, that no objection was made to such statement, and that such argument before the jury was permissible. As the jury had already been made aware of the reasonable inference that appellant was in fact dealing in drugs, we find that any statement made to the effect that such dealing occurred between Miami and Atlanta could not have in reasonable probability changed the result of the trial. See *Tharpe v. State*, 262 Ga. 110, 114 (16) (416 SE2d 78). (Incidentally, appellant made an admission in judicio in open court during direct examination that he previously "used cocaine . . . a few times before" (*Hargroves v. State*, 179 Ga. 722, 725 (4) (177 SE 561); *Cape v. State*, 165 Ga. App. 825 (303 SE2d 77)); thus, the question of his character regarding his association with drugs had been voluntarily raised, albeit to a lesser degree, by appellant's own testimony. On cross-examination, appellant further clarified that the cocaine he had used previously also was in the form of white powder.)

Our holding is not to be construed as support for the State's conduct. Although the State did not offer its original evidence of drug sales from Miami to Atlanta but merely argued such as an inference, we cannot condone the State's ingenious circumvention of the trial court's ruling (whether that ruling ultimately would have been found to be legally correct) that no evidence would be allowed regarding appellant's alleged sale of cocaine from Miami to Atlanta, unless such evidence subsequently qualified for admission in rebuttal. It is the trial court and not counsel who is given the responsibility and power by law to exercise discretion in the admission of evidence and the control of the trial proceedings and of the parties before it. See generally OCGA §§ 15-1-3; 15-2-8; *Santone*, supra at 792 (3); *In re McLarty*, 152 Ga. App. 399, 402 (4) (263 SE2d 194).

*Judgment affirmed. Beasley and Andrews, JJ., concur.*

DECIDED MARCH 8, 1993.

*Morris E. Braswell, William L. Woods,* for appellant.
*Robert E. Keller, District Attorney, Todd E. Naugle, Assistant District Attorney,* for appellee.