## A93A0913. CASTER v. THE STATE.
(437 SE2d 608)

SMITH, Judge.

Cornell Caster was convicted of trafficking in cocaine, OCGA § 16-13-31 (a) (1) (C), and he appeals. In his three enumerations of error, he challenges the trial court's denial of his motion to suppress the drugs found in the car he was driving at the time of his arrest.

The record reveals that Caster was driving north on I-75 in Cherokee County when he was stopped shortly before midnight by Sgt. Robbie Bishop of the Cherokee County Sheriff's Department. Bishop, the supervisor of the Selective Traffic Enforcement Patrol in Cherokee County, spends most of his time patrolling the 2.1 miles of I-75 within Cherokee County at night. He testified that he had been parked on the right shoulder of the highway under a bridge, observing traffic, and pulled onto the highway to check on a fellow officer who had made a traffic stop up ahead. He was driving his own vehicle in the center lane, and stopped Caster's car after observing it move abruptly from the right lane to the center lane immediately in front of him without signalling, almost causing a wreck.

He approached Caster's car and asked Caster for his driver's license and insurance card. Caster produced a driver's license and a car rental agreement. Bishop noticed that the agreement had been issued in Missouri in the name of a third party, with Caster listed as an additional driver. Based on that, and his observations that Caster was extremely nervous; that there was a pillow in the back seat; and that aspects of Caster's conversation regarding having attended a funeral in Atlanta were inconsistent, he explained to Caster that they had "a problem with drugs being trafficked up and down the interstate," and asked if he could search Caster's car. Caster denied having any drugs in his car and stated he did not mind if his car was searched. Bishop searched the trunk and bags, and looked in the back seat. He noticed that the bench seat was "kind of loose" but "didn't carry it any further" at that time.

After giving him a verbal warning, Bishop decided to "run" Caster's driver's license while he continued the search. However, he admitted at some point he lost Caster's driver's license. He again asked Caster whether he still had permission to continue the search, and Caster agreed. He looked further in the back seat (where he found Caster's driver's license), and while pulling up the left side of the loose rear passenger seat, noticed a yellow package that appeared to him to be a typically wrapped kilo block of cocaine. He called for backup and pulled the package out. Two more packages were found when the seat was removed, inside plastic bags smeared heavily with mustard. Caster denied knowing anything about the cocaine.

1. Caster contends his motion to suppress was erroneously denied

because the stop was pretextual in nature. He argues that he was stopped only for the purpose of looking for drugs, and that no legitimate reason existed for the stop, since he swerved into the center lane after seeing the flashing blue lights of Bishop's colleague at the side of the road. Although the facts conflicted as to whether Caster signalled the lane change, the trial court resolved this conflict in Bishop's favor. Since there is evidence to support this ruling, we must accept it. *Williams v. State*, 256 Ga. 609, 610 (1) (351 SE2d 454) (1987).

" '[I]n determining when an investigatory stop is unreasonably pretextual, the proper inquiry . . . is not whether the officer *could* validly have made the stop but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose.' *United States v. Smith*, 799 F2d 704, 709 (11th Cir. 1986). In *Smith*, the trial court had found that no traffic violation had occurred, and the appellate court concluded that there was not even probable cause to believe that a traffic violation had occurred or was occurring. Id. at 709." *State v. Tate*, 208 Ga. App. 117, 120 (430 SE2d 9) (1993). The trial court applied this established legal test to the facts and determined that the stop was not unreasonably pretextual. As pointed out by the trial court, the fact that Caster may have had an innocent reason for swerving into the center lane does not demand a finding that the stop was invalid.

Unlike *Brown v. State*, 188 Ga. App. 184 (372 SE2d 574) (1988), relied on by Caster, no evidence was adduced that Bishop was using a "drug courier profile" to select vehicles to stop. This court has frequently upheld traffic stops, made after the drivers had committed traffic violations within observation of law enforcement officers, that ultimately resulted in uncovering evidence of transportation of drugs. See *Tate*, supra at 121-122, where a number of such cases are listed. Bishop testified that he routinely issued traffic citations to drivers for offenses involving the violation of OCGA § 40-6-123, which concerns lane changes and signalling, although he did not do so this time because he did not have his citation book with him. Viewed objectively, Caster's driving behavior, as observed by Bishop, both violated the traffic laws of this state and reasonably gave rise to an articulable suspicion that Caster may have been driving under the influence of drugs or alcohol, or that he may have fallen asleep at the wheel, rendering him a danger to others. Based upon evidence of an observed traffic violator, the trial court correctly concluded that the stop was not pretextual.

2. Our determination that the stop was not pretextual renders moot Caster's contention that his consent to the search of his vehicle was the product of an illegal stop and insufficiently attenuated to be valid.

3. Caster also asserts, however, that the search conducted by

Bishop exceeded the scope of the permission he granted, as the consent given did not extend to "dismantling" the car.

We find no merit in this assertion for several reasons. First, the transcript belies Caster's assertion that Bishop "dismantled" the car. Bishop testified that he had noted that the back seat was loose and, without exerting any force, he was able to lift the seat and observe the contraband. Second, in contrast to the circumstances in *State v. Diaz*, 191 Ga. App. 830, 831 (2), 832 (383 SE2d 195) (1989), and *Amato v. State*, 193 Ga. App. 459, 460 (1) (388 SE2d 54) (1989), cited by Caster, Caster clearly gave his consent to a thorough "search," including everything found in the car, rather than merely to a "look inside" or "in" the car and its contents. See *Barnwell v. State*, 197 Ga. App. 116, 117 (2) (397 SE2d 717) (1990). Finally, the transcript reveals no evidence whatsoever that Caster, after having given his consent, ever objected to the extent of the search or withdrew his consent as the search proceeded. Indeed, he assisted the officer in conducting the search, and repeated his permission several times when asked. We conclude that the trial court did not err in finding that the search did not exceed the scope of Caster's consent. See *Garcia v. State*, 207 Ga. App. 653, 655-656 (1) (b), (c) (428 SE2d 666) (1993).

*Judgment affirmed. Beasley, P. J., and Cooper, J., concur.*

DECIDED SEPTEMBER 28, 1993 —
RECONSIDERATION DENIED NOVEMBER 9, 1993.

*Wallace W. Rogers, Jr., W. Alan Jordan*, for appellant.

*Garry T. Moss, District Attorney, Gregory A. Hicks, Assistant District Attorney*, for appellee.