## A94A2160. OLIVER v. THE STATE.

(453 SE2d 746)

BIRDSONG, Presiding Judge.

Bruce Oliver appealed to the Georgia Supreme Court the trial court's order denying his plea of double jeopardy, asserting the appeal involved a constitutional question; the Supreme Court transferred the case to this court. Appellant asserts the trial court erred in denying his double jeopardy plea.

Accusations were filed against appellant for three counts of misdemeanor offenses of abusive telephone calls to certain victims and their families. Appellant filed two pretrial motions in limine which the State elected not to oppose. One of these motions was to suppress all evidence of obscene phone calls and also to prohibit adults from testifying as to what children told them had been said on the phone. It appears that during the hearing on these motions the State represented that apparently no one could remember or was available to testify to any obscene phone calls, and therefore the State had no objection to the motions in limine. Both motions were granted. Trial commenced and based on the pretrial position taken by the State, appellant's counsel made an opening statement in which she informed the jury that appellant "is charged with making harassing phone calls to three different households . . . and those are hang up calls, except for one call, which is an innocuous call and not obscene, not argumentative or anything like that. All the other calls were hang up calls." During the course of trial the State learned that one child was now willing to testify to an unrecorded phone call and commenced to lay the foundation for the introduction of such evidence. Appellant's counsel interposed a timely objection to the State's conduct. Appellant's counsel affirmatively stated on the record how appellant's case would be prejudiced as counsel had relied on both the prior statements of the State and the prior rulings on the motion in limine, and had commenced the defense's whole trial strategy in one particular way. Thereafter the following colloquy occurred: "THE COURT: Well, I am a little troubled switching over in the middle of the stream because I understood earlier that the case was going to involve hang up phone calls and we had the records for those. Do you insist on using this witness? [SOLICITOR]: *Yes, sir.* I think so. [DEFENSE]: We would be vehemently opposed. We may have to move for a mistrial if they insist on using that. As I said again, the obscene phone calls are not relevant. It's something used solely to inflame the jury because this is not a charge of obscene phone calls. This is a charge of harassing phone calls. THE COURT: I would be inclined to grant your motion for a mistrial because I do remember your opening statement telling them that it was hang up phone calls and for them to use something else would be, I would think, highly prejudicial. . . . By

the same token, I'm not going to tell [defense counsel] that we're not going to use certain evidence and then let it get in after she's committed one way. . . . [SOLICITOR]: Can we have about ten or fifteen minutes? THE COURT: We'll take ten minutes. (Whereupon, a break was had.) . . . THE COURT: I believe [the solicitor's] position is going to be that he's going to insist on presenting the evidence and I indicated that if that's in or going to get in, then I'll grant your motion for mistrial. [DEFENSE]: Well, let me talk to my client to make sure that's what he wants to do. . . . Your Honor, if the State does attempt to use that, we would move for a mistrial on that. So, I don't know if you want to proceed to the point of the State doing that or do you want to go ahead and rule right now? THE COURT: My understanding is your intentions are to use it? [SOLICITOR]: At this time, we definitely intend to because we can definitely tie at least one of the children to a traced number and I believe two children we can trace to the same traced number through the use of the same fictitious names. [DEFENSE]: And, Your Honor . . . I did file the two motions in limine . . . there was an agreement that those be granted. . . . THE COURT: I'll grant your motion for mistrial. Are you making a motion for mistrial? [DEFENSE]: Yes, sir. I am making a motion for mistrial. THE COURT: Your motion for mistrial is granted. We've excused all the jurors for this term. The next term will be in June. . . . [The jury returned to the courtroom.] . . . Ladies and Gentlemen . . . there's been a motion made for a mistrial . . . and I'm going to grant [the] motion for mistrial, which really means that we can't go forward with the case today. It will be tried in June, our next term. . . . You six jurors will not be deciding this case. You will not come back in June." (Emphasis supplied.) The hearing concluded without further comment by appellant's counsel. *Held*:

"Jeopardy attached in this case. Once the jury has been impaneled and sworn, jeopardy attaches. [Cit.] 'Retrial is permissible only if a manifest necessity existed for the declaration of the mistrial lest otherwise the ends of public justice be defeated; the existence of manifest necessity is to be determined by weighing the defendant's right to have his trial completed before the particular tribunal against the interest of the public in having fair trials designed to end in just judgments; and the decision must take into consideration all the surrounding circumstances.' " *Dotson v. State*, 213 Ga. App. 7, 8 (1) (443 SE2d 650). In this case, appellant moved for mistrial; the record affirmatively establishes that, as the State intended to introduce the testimony of at least one child which it had not known was available when it elected not to oppose appellant's pretrial motion in limine, manifest necessity existed within the meaning of *Dotson*, supra, for the granting of appellant's pretrial motion. The trial court did not abuse its discretion in granting appellant's mistrial motion.

Appellant, however, asserts retrial is barred by double jeopardy as the State's conduct amounted to prosecutorial overreaching, motivated by bad faith on the part of the prosecuting attorney with the intent to prejudice appellant. "If a defendant moves for a mistrial and the motion is granted, *normally* he may be tried again. [Cits.] However, there exists a 'narrow exception' to the rule that double jeopardy will not bar retrial in such instances. *Oregon v. Kennedy*, 456 U. S. 667, 673 (102 SC 2083, 72 LE2d 416). Thus, if a mistrial is granted on the grounds of prosecutorial overreaching and such was motivated by bad faith on the part of the prosecuting attorney or with the intention to harass or prejudice the defendant, for example, by successive prosecutions or by declaration of a mistrial in order to afford the prosecution with a more favorable opportunity to convict, then a defendant's retrial is barred. [Cits.] Under this exception, it is '(o)nly where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.' " *State v. Maddox*, 185 Ga. App. 674, 675 (365 SE2d 516). The record and transcript do not affirmatively establish that the conduct of the State was motivated either by bad faith or with an intent to harass or prejudice appellant's right to fair trial; rather, it appears that due to unanticipated circumstances relevant testimony became available to the State and it elected to try to introduce it in evidence. Even so, the State did not recklessly proceed to introduce such evidence before the jury but afforded appellant an opportunity to object to the evidence and to seek mistrial or curative action, as deemed appropriate. Neither does the record reflect that this was a situation where the State fearing ultimate acquittal of appellant chose to engage in trial tactics primarily to obtain a more favorable opportunity to convict. The transcript reveals the State did not initially "feel that it would be in the best interest of the children to put them through that on the stand. But, now, [the State believes] one of the children wants to testify." The State further clarified the situation as follows: "I talked to the mother during the break today. She called me and said that she had gone by the school and talked with her daughter just to be sure how she felt about this." Thus, rather than showing bad faith or evil intent, the transcript reflects the State was faced with an unexpected situation where the parent of the child had ascertained on the day of trial that her daughter now wanted to testify. While we do not encourage the State's conduct and find there often exists a thin line between legitimate prosecutorial tactics and prosecutorial overreaching, we do not conclude that the State's conduct warrants an expansion of the "narrow exception" which would bar retrial. " 'Mistrial' is a proper remedy to use to negate the potentially prejudicial effect of such evidence

when a curative instruction will not suffice. We see no need to add gratuitously the extreme sanction of double jeopardy in the absence of genuine prosecutorial overreaching or similar judicial conduct." Id. at 676.

*Judgment affirmed. Blackburn, J., concurs. Ruffin, J., concurs specially.*

RUFFIN, Judge, concurring specially.

While I agree that the judgment below should be affirmed, I write separately because the record demonstrates there was no prosecutorial misconduct in the presence of the jury; therefore, there was no manifest necessity for the declaration of a mistrial. Appellant's retrial is not barred because the requirement that there be intentional prosecutorial misconduct "intended to subvert the protections afforded by the Double Jeopardy Clause" was not met. See *Williams v. State*, 258 Ga. 305, 312 (1) (A) (369 SE2d 232) (1988). Moreover, the termination of the trial resulted from appellant's premature mistrial motion. "[S]elf-induced error is not grounds for reversal. [Cit.]" *Sullens v. State*, 239 Ga. 766, 767 (2) (238 SE2d 864) (1977).

The trial court is authorized to declare a mistrial when prejudicial conduct on the part of counsel in the presence of the jury "makes it impossible to proceed with the trial without injustice to the defendant." OCGA §§ 16-1-8 (e) (2) (B); 17-8-75. In the instant case, the trial court granted appellant's motion for a mistrial upon a finding of prosecutorial overreaching based on the prosecutor's stated intention to subsequently introduce the testimony of a child regarding an allegedly obscene telephone call contrary to a pre-trial order on a motion in limine. However, there was no actual mention of the child or the obscene phone call *in the presence of the jury*, nor did the prosecutor say anything else before the jury immediately prior to appellant's objection which could be construed as prejudicial. The record further shows that appellant stated his objection after the court excused the jury from the courtroom. As a result, the entire discussion regarding the admission of the testimony, in which the prosecutor stated his intention to introduce the testimony, occurred outside the presence of the jury. Thus, appellant's motion for a mistrial and the court's grant of the motion were premature, having occurred before the mention of obscene phone calls before the jury.

I also do not agree that the prosecutor's mere expression of his intention to subsequently introduce such evidence, in and of itself, was prejudicial. "It is the trial court and not counsel who is given responsibility and power by law to exercise discretion in the admission of evidence and the control of the trial proceedings and of the parties before it. [Cits.]" *Garcia v. State*, 207 Ga. App. 653, 658 (2c) (428 SE2d 666) (1993). Rather than inviting appellant to move for a

mistrial when the prosecutor announced his intention to introduce the testimony, the court should have responded by determining whether the testimony should have been excluded pursuant to the order on the motion in limine.

DECIDED JANUARY 13, 1995.

*Amy A. Petulla,* for appellant.
*Clements & Clements, Patrick R. Clements,* for appellee.