## A97A1144. SEMELIS v. THE STATE.
(493 SE2d 17)

RUFFIN, Judge.

A jury found Frenel Semelis guilty of trafficking in cocaine and misdemeanor possession of marijuana. Semelis appeals, challenging the denial of his motion to suppress and the sufficiency of the evidence. For reasons which follow, we affirm.

1. " 'In reviewing a trial court's decision on a motion to suppress[,] . . . our responsibility is to ensure that there was a substantial basis for the decision. In so doing, we . . . consider all relevant evidence of record, wherever located, including evidence introduced at a suppression hearing and that introduced at trial; we construe the evidence most favorably to uphold the findings and judgment, and must adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. Further, since the trial court sits as the trier of facts, its findings will not be disturbed if there is any evidence to support them.' [Cits.]" (Emphasis omitted.) *State v. Brodie*, 216 Ga. App. 198, 199 (1) (c) (453 SE2d 786) (1995).

Viewed in this light, the evidence of record shows that Camden County Deputy Sheriff Jason Merrow was "running radar" on Interstate 95 when he stopped Semelis for speeding. Deputy Merrow asked Semelis for his license and registration and to exit the car.

Semelis complied, and Deputy Merrow explained the reason for the stop. In response to Deputy Merrow's questioning, Semelis, who is a migrant farm worker, explained that "he was headed to New York to pick apples." After finding Semelis' license was valid and that Semelis had no outstanding warrants on him, Deputy Merrow returned the paperwork to Semelis, gave him a verbal warning, and "told him he was free to go."

According to Merrow, however, due to Semelis' excessive nervousness, he asked him "if he wasn't in a big hurry, could [he] run something by him real quick." Merrow explained to Semelis that they had a problem on Interstate 95 with people trafficking various items of contraband and asked Semelis if he had any such items in his vehicle. Semelis told Deputy Merrow he possessed no such contraband, but Merrow asked Semelis for his "verbal consent to search the vehicle and the contents of the vehicle." Deputy Merrow testified that he "made sure [Semelis] understood what the vehicle and the contents of the vehicle meant, that [he] wanted to search all the compartments inside the vehicle." According to Merrow, Semelis stated that he understood and consented to the search. When a backup Deputy arrived, Deputy Merrow began the search.

During the search, Deputy Merrow noticed that one of the door vents was missing some screws, and that the only screw holding the vent did not appear the same as other screws in the vehicle. Merrow suspected that something might be concealed behind the vent and obtained a screwdriver to remove the vent. Upon removing the vent, Deputy Merrow discovered a black garbage bag inside the vent cavity. Merrow pulled the bag from the cavity and looked inside where he found numerous clear bags containing an off-white, chunky substance that was later determined to be 472.6 grams of cocaine. The bag also contained a green, leafy substance that tested positive for marijuana.

Prior to trial, Semelis moved the court to suppress evidence of the cocaine found in the search. Semelis argued that the consent was invalid because Deputy Merrow never informed him that he could refuse to consent or terminate the search at any time, and that in any event, the search exceeded the scope of any consent that was given. He asserts as error the trial court's denial of his motion.

(a) The evidence showed that Semelis' consent to search the vehicle was valid under the Fourth Amendment. Contrary to Semelis' contention, Deputy Merrow was not required to inform him that he had a right to refuse the request to search or terminate the search. While the giving of such information " 'is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent.' [Cit.]" *Ohio v. Robinette*, 519 U. S. ___ (117 SC 417, 136 LE2d 347) (1996). "The Fourth Amend-

ment test for a valid consent to search is that the consent be voluntary, and '(v)oluntariness is a question of fact to be determined from all the circumstances[.]' [Cit.]" Id. at ___. These circumstances include " 'the age of the accused, his education and intelligence, the length of detention, whether he was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of these factors. *Schneckloth v. Bustamonte*, 412 U. S. 218, 229 (93 SC 2041, 36 LE2d 854) (1973); [cit.].' [Cit.]" *State v. Jackson*, 201 Ga. App. 810, 815 (2) (412 SE2d 593) (1991).

In this case, the evidence shows that Semelis was a 28-year-old migrant farm worker who immigrated to the United States from Haiti approximately 11 months prior to the traffic stop. There is no direct evidence showing Semelis' education level, but the record shows he is illiterate, speaks Creole and has some problems speaking and understanding English. In fact, the trial court ordered the appointment of an interpreter to assist counsel in his defense of Semelis. There is nothing indicating that the initial traffic stop was abnormally long or that Semelis was subjected to any prolonged questioning or physical punishment. Finally, although Deputy Merrow did not inform Semelis of his constitutional rights, after he returned the license and other documentation to Semelis, he told Semelis that "he was free to go."

Although we are seriously troubled by the fact that the trial court found that Semelis required the use of an interpreter at trial, and yet was deemed by the trial court to understand Deputy Merrow's statements during the traffic stop, we are constrained by the "any evidence" standard to adopt the trial court's factual finding that Semelis voluntarily consented to a search of his vehicle and all its compartments. Despite Semelis' apparent difficulty understanding English, as stated above, Deputy Merrow unequivocally testified that he "made sure [Semelis] understood what the vehicle and the contents of the vehicle meant, that [he] wanted to search all the compartments inside the vehicle." Deputy Merrow also testified that Semelis stated that he understood the request to search when he consented to the search. As the factfinder on the motion to suppress, the trial judge was uniquely situated to observe Deputy Merrow's demeanor and to judge the credibility of the testimony presented. See *Tate v. State*, 264 Ga. 53, 57 (3) (440 SE2d 646) (1994). In light of this evidence, in combination with the other factors discussed above, we conclude that the trial court did not clearly err in finding that Semelis voluntarily consented to Deputy Merrow's search of the vehicle. See id.; *Robinette*, supra; *Brodie*, supra; *Jackson*, supra.

(b) We also find that the search did not exceed the scope of Semelis' consent. In *Lopez v. State*, 184 Ga. App. 31 (1) (360 SE2d 722)

(1987), we reviewed similar circumstances where the defendant consented to a search of his car, and the investigating officer removed an interior component during the ensuing search. In *Lopez*, as in this case, a trooper removed a vent by extracting a screw. We ruled that in light of the trial court's discretion in determining fact questions, we could not say as a matter of law that the search was overly intrusive. Id. at 32. Similarly, in *Garcia v. State*, 207 Ga. App. 653 (1) (428 SE2d 666) (1993), the defendant consented to let police search his car, and during the search an officer removed a loosely connected radio panel from the dashboard. We found it significant that the defendant "did not limit [his] consent merely to looking inside without authorizing the touching or moving of any of the interior components thereof." Id. at 656. In light of the broad nature of the consent and the minimal force used to remove the panel, we found that the removal did not exceed the reasonable parameters of the consent as a matter of law. Id.

As we found in Division 1 (a), there is evidence in this case showing that Semelis consented to a search of all the compartments inside his vehicle. There is no evidence that the deputy did anything more than extract the screw and remove the vent cover before locating the bag containing the cocaine and marijuana. Accordingly, we cannot say as a matter of law that the search was overly intrusive or that the trial court erred in denying Semelis' motion to suppress on this ground. See *Lopez*, supra; see also *United States v. Flores*, 63 F3d 1342, 1362 (5th Cir. 1995) (extracting two screws and removing vent covers from interior panel did not exceed scope of consent to "search the 'vehicle' including the 'containers and contents.'"). Compare *Amato v. State*, 193 Ga. App. 459 (1) (388 SE2d 54) (1989) (officer's action in pulling off and breaking vent cover exceeded scope of consent for officer to *look* in passenger compartment (physical precedent only)).

2. Viewed in a light most favorable to support the verdict, the evidence presented was sufficient for a rational trier of fact to find beyond a reasonable doubt that Semelis was guilty of the charged offenses. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Although Semelis seemingly argues that the car dealer from whom he purchased the car approximately three months prior to the stop had equal access to the vehicle, it was for a jury to decide whether these circumstances created a reasonable doubt. See *Moon v. State*, 194 Ga. App. 777 (2) (392 SE2d 19) (1990).

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 15, 1997.

*Clyde M. Urquhart*, for appellant.

*Stephen D. Kelley, District Attorney, George C. Turner, Jr., Assistant District Attorney, Glenn Thomas, Jr.,* for appellee.