## A99A0552. STRAITE v. THE STATE.
(518 SE2d 914)

SMITH, Judge.

Eric Straite was indicted on a charge of trafficking in cocaine. OCGA § 16-13-31 (a) (1). He moved to suppress the contraband, and after a hearing his motion was granted. The State moved for reconsideration of the trial court's order suppressing the evidence, and the trial court granted the State's motion. The case was then tried before a jury, which found Straite guilty. His motion for new trial, as amended, was denied, and he brings this appeal. We find no error and affirm.

1. Straite first raises the general grounds. At trial, Straite testified that he was a North Carolina resident. According to Straite, he and a friend, Douglas Adams, decided to drive to Atlanta in the summer of 1996. Straite testified he wanted to visit friends in Atlanta and Adams wanted to sightsee and see the Olympic village. Straite testified he used his mother's credit card to rent a car for the trip, and he and Adams drove to Atlanta on July 10th. En route, they were stopped on I-85 in South Carolina at about 1:00 p.m. for speeding, and Straite was issued a warning citation. The officer asked if he could search the car, Straite consented, and the car was searched. Nothing was found. When Adams then asked to use the restroom, the

officer patted him down and discovered marijuana on his person. Adams was fined over $300, and Straite paid part of the fine, leaving him with only six dollars. They then continued driving to Atlanta.

They arrived at the home of Straite's friend, where "five or six" people were gathered, including James Gilmore, who was known to Straite. Straite and his friend remained at the apartment while Adams and Gilmore left in the rental car to see the Olympic village. Straite estimated they were gone "maybe an hour, hour and a half." When they returned, Straite borrowed $20 from his friend for the return trip, and he and Adams prepared to leave, although they had been in the Atlanta area for only a few hours. Gilmore asked if he could ride with them to North Carolina, and Straite agreed. Straite handed him the car keys so he could place his belongings in the car, and Gilmore left with a black tote bag. When Gilmore returned, Gilmore changed his mind about riding with Straite and Adams.

Straite and Adams left Atlanta about 7:30 p.m., and they were stopped in Gwinnett County by Deputy Myron Walker of the Gwinnett County Sheriff's Department at approximately 8:00 p.m. for failure to maintain lane. Both Walker and Straite testified that Straite was informed he would be given a warning and would be free to go. As Straite was about to leave, Walker asked him if he had anything illegal in the car. When Straite answered no, Walker asked if he would consent to a search, and Straite consented.

While Walker was filling out the written consent form, another Sheriff's Department officer, Sgt. Robert Rapien, arrived. Walker told Rapien in the presence of Straite that consent had been obtained, and Rapien began the search of the rental car. When he searched the trunk, he pulled back the soft panels inside the trunk liner and saw a brown paper sack on top of the fender well. The package was tied with a knot, which Walker cut, and upon opening the package the officers discovered white material wrapped in cellophane. Straite and Adams were then both arrested and handcuffed. Rapien field tested the white substance, and it proved positive for cocaine. A GBI forensic chemist testified that the contraband consisted of 35.9 ounces of cocaine with a purity of 80.7 percent. Straite maintained his innocence, claiming he knew nothing of the cocaine in the trunk.

Straite argues that the evidence was entirely circumstantial, and that the State failed to eliminate all other reasonable hypotheses save his guilt. We do not agree. Even assuming that the evidence presented was entirely circumstantial, the question of whether to believe Straite's protestations that he knew nothing of the cocaine and whether the evidence excluded every reasonable hypothesis save Straite's guilt were for the jury. *Cantrell v. State*, 230 Ga. App. 693, 695 (498 SE2d 90) (1998). Straite had no luggage or personal items

on the trip, and he was in Atlanta only a few hours, based upon the time of the stops in South Carolina and Gwinnett County. The State showed that the credit card Straite used to rent the car had been used to rent 22 or 23 vehicles for Straite within the fourteen-month period prior to this stop, at a cost of over $70,000. Straite testified he earned between $24,000 and $26,000 a year. Straite claimed he rented cars frequently to go to various car races in South Carolina, and he sometimes rented cars for customers of his auto detailing business. But these rental vehicles had been driven a total of almost 25,000 miles. The evidence presented was sufficient to authorize the jury to find Straite guilty of trafficking in cocaine under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Straite asserts the trial court erred in denying his motion to suppress because the search of the car exceeded the consent granted. We do not agree.

In its original order granting the motion to suppress, the trial court relied upon *Amato v. State*, 193 Ga. App. 459, 460 (1) (388 SE2d 54) (1989), finding that the search had exceeded the scope of the consent. But the facts surrounding both the consent given and the search were different in *Amato*. In that case, the officer merely asked if the driver objected to opening his trunk and requested permission only to "look in" a cooler and other items in the trunk. Id. at 459. Consent was given, but no contraband was located in those items, prompting the officer to inquire whether he could look in the passenger compartment and the "things" therein. Consent was again obtained, but when the officer again found nothing he pried off a vent cover attached to the doorframe and broke it. He found a package that later proved to contain cocaine. This court held in *Amato* that the search exceeded the scope of the consent given, because the consent did not authorize the officer to disassemble the car. Id. at 460 (1).

The consent in this case was broader. In addition to giving verbal consent, Straite signed a written consent form authorizing officers "to conduct a complete search of my vehicle and the contents within it" and "to take from the above described vehicle any property or contraband that is present, which violates State and Federal law." The search, on the other hand, was narrower. Straite's car was not "disassembled." Rapien testified that he merely pulled back some carpet panels that were attached with velcro. The search of Straite's trunk did not exceed the scope of the consent, and the trial court properly granted the State's motion for reconsideration and denied Straite's motion to suppress. *Caster v. State*, 210 Ga. App. 809, 810-811 (3) (437 SE2d 608) (1993). See also *Semelis v. State*, 228 Ga. App. 813, 815-816 (1) (b) (493 SE2d 17) (1997).

3. Straite alleges the trial court erred in finding that the newly discovered evidence on which his motion for new trial was based was insufficient. We find no merit in this enumeration.

> The standard for granting a new trial on the basis of newly discovered evidence is well established. It is incumbent on a party who asks for a new trial on the ground of newly discovered evidence to satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness. All six requirements must be complied with to secure a new trial.

(Citations and punctuation omitted.) *Timberlake v. State*, 246 Ga. 488, 491 (271 SE2d 792) (1980).

In support of the motion for new trial, Straite proffered the "newly discovered" testimony of Adams. Adams did not testify at trial. He was arrested with Straite, but the charges against him were dismissed at a preliminary hearing and he returned to North Carolina. He was subsequently re-indicted, and when he did not appear, a warrant was issued in Gwinnett County for his arrest. By the time Adams testified at the hearing on Straite's motion for new trial, he had pled guilty to a lesser offense and received a reduced sentence. Adams testified at the hearing that Gilmore placed the cocaine in the trunk and that Straite had no knowledge of the cocaine. He stated he had not come forward earlier because no one asked him about it.

This evidence does not meet all the requirements outlined in *Timberlake*. Straite failed to show due diligence in obtaining Adams's testimony at trial. He and Adams were lifelong friends, and he failed to show that he could not locate Adams. In fact, Straite's trial testimony indicates that he did talk to Adams before trial and that Adams told him he would not return to Georgia and Georgia authorities "were going to have to come and get him." Further, Straite testified himself at trial that he had no knowledge of the cocaine, so at least a portion of Adams's testimony was clearly cumulative. And although Adams testified that he would have given the testimony at trial had anyone asked him, this statement conflicted with Straite's testimony that Adams would not come to Georgia.

Given Adams's silence while it was possible for him to receive a greater punishment, his post-trial testimony is completely lacking in

credibility, and it is not probable that his testimony at trial would have produced a different verdict. Similar situations, in which co-defendants have pled guilty and then made post-trial offers to exculpate their co-defendants, have been disapproved by this court. See, e.g., *Ansell v. State*, 172 Ga. App. 89 (1) (321 SE2d 819) (1984); *Highfield v. State*, 163 Ga. App. 599, 600 (1) (295 SE2d 350) (1982). When a co-defendant who was available to testify at trial offers to exculpate the defendant after the co-defendant has removed himself from further jeopardy, the evidence does not qualify as "newly discovered." *Highfield*, supra at 600 (1). The trial court did not err in denying the motion for new trial.

4. In his final enumeration, Straite contends the trial court erred in ruling that he received effective assistance of counsel at trial.

A trial court's finding that a defendant has received effective assistance of counsel must be affirmed unless clearly erroneous. *Rogers v. State*, 210 Ga. App. 164 (2) (435 SE2d 457) (1993). The burden was on Straite to show both that his trial counsel's performance was deficient and that the deficient performance prejudiced his defense. *Brown v. State*, 257 Ga. 277, 278 (2) (357 SE2d 590) (1987). A strong presumption exists that representation has been effective, and trial strategy and tactics do not establish ineffective assistance. *Davis v. State*, 209 Ga. App. 755, 757 (1) (434 SE2d 752) (1993). "In the absence of testimony to the contrary, counsel's actions are presumed strategic. [Cit.]" *Earnest v. State*, 262 Ga. 494, 496-497 (5) (422 SE2d 188) (1992).

Straite claims his trial counsel was ineffective in several ways, none of which is persuasive. His claim that counsel failed to consult with him is belied by the undisputed testimony of trial counsel that he met and talked with Straite on several occasions. His principal contention is that his trial counsel was ineffective in failing to contact or find his co-defendant, Adams. But trial counsel testified without contradiction that the decision not to use Adams was a trial strategy formed in consultation with and with the approval of Straite. Straite's defense depended upon his claiming innocence and attempting to shift blame to Adams.

Adams's failure to appear at trial and continued flight from justice lent credibility to this theory. This was clearly trial strategy and did not constitute ineffective assistance of counsel.

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED JUNE 3, 1999.

*Henderson & Lipscomb, Lyle K. Porter*, for appellant.

*Daniel J. Porter, District Attorney, Donald P. Geary, Assistant District Attorney*, for appellee.