A97A1182. JONES v. THE STATE.
(487 SE2d 618)

JOHNSON, Judge.

A jury found James ("Jimmy") Lee Jones guilty of attempting to

murder his ex-wife. He appeals from the judgment entered on that verdict and the denial of his motion for new trial.

The following is a brief synopsis of the evidence presented at trial: Barbara Mace filed a divorce action against Jones, which he opposed. Before the divorce was final, one of Mace's children from a prior marriage accused Jones of sexually molesting her. The Department of Family & Children Services investigated the allegations, and Jones was arrested and indicted on charges of child molestation and enticing a child for indecent purposes. The indictment was read to the jury. Jones was raped and beaten while he was in jail on those charges. According to testimony from several witnesses, Jones believed Mace had instigated the child molestation case, and he held her responsible for the violence done to him in prison and for his continuing legal problems. A woman with whom Jones had lived in Tennessee after his relationship with Mace ended testified that she overheard Jones trying to hire someone to kill Mace. When she found a hand-drawn map to Mace's house, she reported it to police, but no arrest was made. Jones then moved to Savannah, where he became increasingly agitated at work, frequently berating Mace and talking about killing her or having her killed. Jones asked a co-worker, John Galletta, if he would kill Mace for him. Galletta testified that he thought Jones was joking and agreed to do it. When Jones provided him with a map to her house and showed him a gun and a silencer he was trying to make out of a lawn mower muffler, Galletta realized that Jones was serious. Galletta drove from Savannah to Mace's workplace near Rome to warn her about the plan. Mace contacted local police who asked for assistance from the Georgia Bureau of Investigation. The GBI contacted Galletta who agreed to wear a body wire to record conversations with Jones about the plans to murder Mace. Galletta taped Jones talking about his difficulties in getting the money together to pay Galletta and problems making the silencer for the gun, but emphasizing his urgent desire to have Mace murdered. At one point on the tape, Jones tells Galletta: "Yeah I want it done. . . . I don't care if my damn kids are with her or not. I want it done." When Jones told Galletta he was going out of town, Galletta and the GBI were concerned that Jones might try to kill Mace himself, and he was arrested.

1. In several related enumerations of error, Jones alleges the trial court erred in admitting the child molestation charges as similar transaction evidence. We agree.

As a preliminary matter, we note that no hearing was conducted as required by Uniform Superior Court Rule 31.3 (B) to determine the admissibility of the similar transaction evidence and that Jones made no objection to the trial court's failure to conduct such a hearing. However, his failure to object to the lack of a hearing does not

constitute a waiver or preclude our consideration of this issue on appeal. See *Riddle v. State,* 208 Ga. App. 8, 10-11 (1) (b) (430 SE2d 153) (1993).

" '(E)vidence of an independent offense or act committed by the accused is highly and inherently prejudicial, raising as it does, an inference that an accused who acted in a certain manner on one occasion is likely to have acted in the same or in a similar manner on another occasion. . . .' *Williams v. State,* 261 Ga. 640 (2) (a) (409 SE2d 649) (1991). . . . It must be established that the State wishes to introduce evidence of the independent offense for an appropriate purpose; that the defendant committed the independent act; and that the independent act and the act for which the accused is being tried have a 'sufficient connection or similarity . . . that proof of the former tends to prove the latter.' Id. [at (2) (b)]." *Andrews v. State,* 267 Ga. 473, 475 (2) (480 SE2d 29) (1997). The law does not require that in order to be admissible for a legitimate purpose as a similar transaction a crime be identical to the crime charged. In *Faison v. State,* 199 Ga. App. 447, 448-449 (405 SE2d 277) (1991), Judge (now Justice) Carley compiled examples of cases in which less than identical crimes were admitted as similar transactions: Evidence of aggravated assault was admissible in a murder case in *Burden v. State,* 250 Ga. 313, 314 (2) (297 SE2d 242) (1982); evidence of larceny or burglary was admissible in a robbery by force case in *Jones v. State,* 158 Ga. App. 585 (2) (281 SE2d 329) (1981); and evidence of assault was deemed admissible in a rape case in *Jackson v. State,* 157 Ga. App. 604, 605-606 (4) (278 SE2d 5) (1981). "[T]here can be a substantial variation of circumstances where there exists a logical connection between crimes which are essentially dissimilar. The issue of admissibility of extrinsic transactions has never been one of mere similarity. It is, rather, relevance to the issues in the trial of the case. Depending upon the purpose for which the extrinsic offense is offered, e.g., where similar transaction evidence is offered to prove identity, the state may be required to prove a high degree of similarity between relevant characteristics of the extrinsic offenses and the charged crimes, or it may only have the burden of showing a *logical connection* between crimes which are essentially dissimilar. . . . When similar transaction evidence is being introduced to prove motive, intent, or bent of mind, it requires a lesser degree of similarity to meet the test of admissibility than when such evidence is being introduced to prove identity. Similar transaction evidence can be introduced to prove [motive] when there exists some logical connection between the similar transaction evidence and the charged offense so that the similar transaction evidence tends to establish the charged offense." (Citations and punctuation omitted; emphasis in original.) *Fields v. State,* 223 Ga. App. 569, 571 (2) (479 SE2d 393)

(1996). Here, however, even applying the lesser, "logical connection" standard of similarity, because the stated purpose for the introduction of the evidence is to prove motive, we see no logical connection between the crimes of child molestation and attempted murder and find that the prejudicial impact of the evidence outweighed its probative value. Treating the specific allegations of another, unrelated offense for which Jones was under indictment at the time of this trial *as a similar transaction*, both during the trial as evidence and in the charge to the jury, was error.

This is not to say that in order to establish motive the state could not have instructed their witnesses to testify that Jones had been arrested on some unspecified charge, or had trouble with the law generally, and that he believed Mace was responsible for those charges. While this evidence would also have introduced Jones' character into evidence, it would have done so only incidentally and for a proper purpose. "While motive is not an essential element in the proof of the crime of [attempted murder], the State is entitled to present evidence to establish that there was a motive. Evidence which is relevant to an issue in a case is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue." (Citations and punctuation omitted.) *Stephens v. State*, 214 Ga. App. 183, 186 (5) (447 SE2d 26) (1994).

We next consider whether it was highly probable that the erroneous admission of the child molestation charges as similar transaction evidence contributed to the judgment, warranting a reversal of Jones' conviction. See *Johnson v. State*, 238 Ga. 59, 60 (230 SE2d 869) (1976). This Court recognizes the inherent danger of speculating, after the fact, about the relative weight given to various evidence by the jury. Here, however, the evidence of Jones' guilt, particularly the audio tape on which he is heard discussing the specific details of the planned murder, was overwhelming. Therefore, we conclude that the erroneous admission of the child molestation charges as similar transaction evidence was harmless beyond a reasonable doubt. See generally *Shields v. State*, 223 Ga. App. 169 (477 SE2d 342) (1996); compare *Hardy v. State*, 223 Ga. App. 597, 598 (1) (478 SE2d 423) (1996); and *Higginbotham v. State*, 207 Ga. App. 424, 427 (4) (428 SE2d 592) (1993).

2. Neither do we find the trial court erred in denying Jones' motions for mistrial when one witness referred to him as a "sick pervert" and another referred to him as a "hateful" person. "Where prejudicial matters have been presented to the jury, the trial court, in its discretion, may determine whether a mistrial is required or whether the giving of cautionary instructions to the jury is an adequate remedial device. The granting or refusing of a motion for mistrial is necessarily a matter largely within the discretion of the trial judge, and

unless it is apparent that a mistrial is essential to the preservation of the right to a fair trial, the exercise of the judge's discretion will not be interfered with." (Citations and punctuation omitted.) *Bess v. State*, 207 Ga. App. 295, 296 (2) (427 SE2d 813) (1993). The trial judge gave curative instructions to the jury, directing them to disregard the unsolicited testimony in both instances in this case. After the reference to Jones as a "sick pervert" the trial judge polled the jury to ensure that each juror felt capable of dismissing that appellation from his or her mind. The trial judge did not abuse his discretion in deciding that cautionary instructions were sufficient in this case. See *Mitchell v. State*, 222 Ga. App. 866, 867-868 (2) (476 SE2d 639) (1996).

3. In a related enumeration of error, Jones complains the trial court erred in failing to give curative instructions after denying his motion for mistrial made when Mace testified that Jones wanted to take naked pictures of her. Jones assumes that this statement also improperly placed his character into evidence. The denial of a motion for mistrial, even absent curative instructions, is not always error. "In the absence of a demonstration that a mistrial was essential to preservation of [Jones'] right to a fair trial, it is not an abuse of discretion to deny a motion for a mistrial even where no curative instructions were given." (Citation and punctuation omitted.) *Chezem v. State*, 199 Ga. App. 869, 872 (4) (406 SE2d 522) (1991). Here, numerous motions for mistrial had been made, and the trial court had given curative instructions several times. The trial court did not abuse its discretion in denying the motion for mistrial without curative instructions in this instance.

4. We have examined Jones' remaining enumerations of error and find them to be without merit.

*Judgment affirmed. Pope, P. J., and Blackburn, J., concur.*

Decided May 28, 1997 —
Reconsideration denied June 6, 1997 — ▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮ Before Judge Cheatham.

*C. Jackson Burch*, for appellant.
*Spencer Lawton, Jr., District Attorney*, for appellee.