## A97A2374. CANTRELL v. THE STATE.
(498 SE2d 90)

SMITH, Judge.

Jeffery James Cantrell appeals from the judgment entered on a jury verdict finding him guilty of the armed robbery of a Golden Gallon convenience store in Dalton, Georgia. He challenges the sufficiency of the evidence introduced against him, as well as the introduction of independent offenses. Finding no error, we affirm.

In this fact-driven appeal, the evidence is examined in a light most favorable to the verdict.[1] As such, the evidence demonstrated that Cantrell and a co-defendant, Albert ("Al") Davis, engaged in a series of convenience store robberies along I-75 in Tennessee and Georgia.

In its case-in-chief, the State first showed that at 3:00 a.m. on May 30, 1996, co-defendant Davis entered a Golden Gallon convenience store near I-75 on Lee Highway in Chattanooga, Tennessee. Davis wore a green hat with an Olympic logo and a multi-colored shirt. He had a cloth in his hand, which he held over the lower portion of his face. Davis threatened the store clerk, Lisa Smith, and ordered her to give him money from the cash drawer. She did so. She did not see a weapon. Ms. Smith watched Davis exit the store, cross the street, and get into an older model, grey/blue car, "sort of like an Impala." Davis entered the passenger side of the Impala. The car had a white license tag with red letters and numbers. The vehicle headed in the direction of I-75.

Four hours later, the indicted offense occurred. Davis entered a Golden Gallon convenience store on Walnut Avenue in Dalton, Georgia, one mile from I-75 in Whitfield County. The store was located approximately 30 miles from the site of the earlier robbery. Davis had a cloth wrapped around his head, masking the lower portion of his face. He was wearing a multi-colored jacket. Davis demanded that the store clerks give him money from the cash drawer. With his left hand in his pocket, as if holding a weapon, Davis threatened the employees, stating: "I have a gun, and if you don't do as I say I'll kill both of you." The store clerks gave him the money. They did not see a weapon. Davis then ordered the clerks into a back room.

During this exchange, a customer had entered the Golden Gallon. Davis did not see him. The customer ascertained the situation and hid behind some shelves. When Davis left the store, the customer got into his car and followed him.

Minutes later, the Dalton Police Department received a radio lookout for robbery suspects in an older model, blue/grey Chevrolet

---

[1] *West v. State*, 224 Ga. App. 190 (480 SE2d 238) (1997).

Impala with Tennessee tags. The suspect vehicle was stopped on I-75, one mile north of the Walnut Avenue exit, heading back to Chattanooga. The time between the initial robbery call and the stop was approximately ten minutes. Cantrell was driving the Impala; Davis was the passenger. A wad of money lay on the front seat between the passenger and driver; a green hat with an Olympic logo was also on the front seat. Various articles of clothing were in the back seat, including a multi-colored jacket. The car's Tennessee tags were red and white. The Impala belonged to Cantrell, who had bought it for his girl friend.

A store clerk from the Dalton Golden Gallon identified the jacket in the back seat as the one worn by the perpetrator. A photographic lineup was prepared, and Lisa Smith from the Chattanooga Golden Gallon identified Davis as the perpetrator of the robbery earlier that morning. Ms. Smith identified the blue/grey Impala as the vehicle in which she saw Davis, as a passenger, flee. She also identified the green hat as the one worn by Davis during the robbery.

The State then introduced a similar transaction involving a robbery committed in Chattanooga, Tennessee, on May 27, 1996, three days prior to the May 30 offenses. In that incident, Cantrell, not Davis, entered the Favorite Market on Lee Highway near I-75. The Favorite Market is located only two or three miles from the Chattanooga Golden Gallon. A towel was draped over Cantrell's hand, which he held over the lower portion of his face. He ordered the store clerk, Mark Arnold, to give him money out of the cash drawer. Mr. Arnold complied. He did not see a weapon. Cantrell then ordered him into a back room. Later, Mr. Arnold was shown a photographic lineup and positively identified Cantrell as the perpetrator of the Favorite Market robbery. During trial, Mr. Arnold made an in-court identification of Cantrell as the perpetrator.

Cantrell testified on his own behalf at trial. Although he had previously told the police that "Al [Davis] has been with me for three or four days," at trial Cantrell stated that the May 30 Golden Gallon robberies had been committed solely by Davis without Cantrell's knowledge. As to the Chattanooga Golden Gallon robbery, Cantrell testified that Davis "used my car for a few hours" while Cantrell ate a steak at a friend's house. As to the Dalton Golden Gallon robbery, Cantrell testified that "Al went to get a pack of cigarettes. He come back, jumped in the floorboard and told me to drive away. I drove away. . . . I get pulled over and charged with armed robbery." Finally, as to the similar transaction robbery at the Favorite Market, Cantrell testified: "I've never been in that store in my entire life."

1. Cantrell first challenges the trial court's denial of his motion for directed verdict.

"The standard of review for the denial of a motion for a directed

verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction." (Citation and punctuation omitted.) *Carter v. State*, 222 Ga. App. 397 (1) (474 SE2d 228) (1996). To sustain the conviction, the evidence must be sufficient to authorize the jury's finding of the defendant's guilt of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Carter*, supra.

In this case, Cantrell contends the State's circumstantial evidence showed only that he was "merely present" as the driver of the Impala and failed to demonstrate that he knew of Davis' robbery plan before it was carried out. We disagree. Evidence was presented that (1) Cantrell himself had committed the same type of convenience store robbery three days earlier; and (2) the driver of the Impala, Cantrell, had used the vehicle as a getaway car for another Golden Gallon robbery four hours earlier. This circumstantial evidence was sufficient to raise the inference that Cantrell knew of the Dalton Golden Gallon robbery plan.

Cantrell also argues that no evidence identified him as the driver of the Impala during the earlier robbery so as to support the above inference. Again, we disagree. The evidence showed that someone other than Davis drove the Impala away from the Chattanooga Golden Gallon robbery; the car belonged to Cantrell, since he bought it for his girl friend; Cantrell referred to the vehicle as "my car"; testimony and photographic evidence was presented that Cantrell and Davis had been virtually living in the Impala for days; Cantrell drove the car wherever he and Davis went; and Cantrell was driving the vehicle when it was stopped immediately following the second robbery, only four hours after the first. Further, the money from the most recent robbery was on the seat between the two men, and articles of clothing strewn about the car were identified by witnesses from both May 30 robberies. In addition, Cantrell was clearly not averse to participation in a robbery, as evidenced by his commission of one three days earlier. We find this circumstantial evidence was sufficient to raise the inference that Cantrell was the getaway driver during both Golden Gallon robberies.

In this circumstantial evidence case, as in all such cases, it was for a jury to decide "whether the circumstances were sufficient to exclude every reasonable hypothesis save the guilt of the accused." (Citation and punctuation omitted.) *Miller v. State*, 163 Ga. App. 406, 408 (294 SE2d 614) (1982). The jury heard and obviously rejected appellant's contention that he was unaware Davis intended to rob the Dalton Golden Gallon. We find the evidence supporting appellant's role, both direct and circumstantial, was sufficient as a matter of law to support his conviction as a party to the crime of armed robbery. OCGA § 16-2-20 (b) (3), (4); *Miller v. State*, supra at 408.

2. Cantrell next challenges the admissibility of the May 30 robbery at the Chattanooga Golden Gallon, which took place approximately four hours before the robbery for which Cantrell was tried. He contends (a) the State failed to provide notice of the intent to introduce that robbery as a similar transaction pursuant to Uniform Superior Court Rule 31.1; and (b) insufficient evidence of "identity" was presented to permit its introduction as a similar transaction. These contentions are without merit.

(a) The trial court admitted the earlier robbery as part of the res gestae of the indicted offense, not as a similar transaction. Thus, the notice provisions of Uniform Superior Court Rule 31.1 were inapplicable. See *Stirrat v. State*, 226 Ga. App. 350, 352-353 (2) (b) (486 SE2d 640) (1997).

(b) A trial judge's determination as to the admissibility of res gestae evidence will not be disturbed on appeal unless that determination is shown to be clearly erroneous. *Sypho v. State*, 175 Ga. App. 833, 835 (3) (334 SE2d 878) (1985); *Vick v. State*, 211 Ga. App. 735, 737 (404 SE2d 508) (1994). We find no error in the trial court's res gestae determination.

3. Finally, Cantrell contends that the May 27 robbery at the Favorite Market was too dissimilar to be admissible as a similar transaction. We do not agree.

"It is well settled that there need not be a criminal charge or conviction relating to a similar offense for it to be admissible. Although a prosecution may fall short of proving a criminal offense, evidence as to certain conduct may nevertheless be admissible in a trial of another offense if the State shows . . . the conduct or transaction is similar to or has a logical connection to the offense being tried." (Citations and punctuation omitted.) *Brown v. State*, 201 Ga. App. 473, 474-475 (2) (411 SE2d 360) (1991); *Randolph v. State*, 198 Ga. App. 291, 292 (2) (401 SE2d 310) (1991). "While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." (Citations and punctuation omitted.) *Looney v. State*, 221 Ga. App. 224, 225 (471 SE2d 243) (1996).

In this case, the similarities between the independent offense and the indicted offense in terms of time frame, area location, targeted stores, and modus operandi are such that "proof of the former tends to prove the latter." (Citations and punctuation omitted.) *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). Evidence of Cantrell's prior conduct created an inference directly related to his knowledge and intent with regard to the indicted offense, i.e., that he was well aware of and condoned what Davis was doing inside

the Dalton Golden Gallon, having himself done the same thing, in the same manner, in the same area, in the same type of store only three days earlier. We find no error.

*Judgment affirmed. McMurray, P. J., and Beasley, J., concur.*

DECIDED FEBRUARY 20, 1998.

*Swift, Currie, McGhee & Hiers, Michael C. Cherof*, for appellant. Jeffery J. Cantrell, *pro se*.

*Kermit N. McManus, District Attorney, Susan L. Franklin, Assistant District Attorney*, for appellee.