### A99A0186. DAVIS v. THE STATE.
(517 SE2d 808)

SMITH, Judge.

Edward Thomas Davis was charged in Gilmer County with two counts of child molestation, enticing a child for indecent purposes, aggravated child molestation, aggravated sodomy, terroristic threats, and cruelty to children in the first degree. The trial court directed a verdict of acquittal on the charge of terroristic threats. A jury found Davis guilty on the remaining charges, and judgments of conviction and sentences were entered thereon. Davis filed a motion for new trial, which was subsequently amended. The trial court denied the motion but vacated Davis's sentence pending resentencing. At the resentencing hearing, the trial court again imposed the same sentence. Davis filed this appeal, raising 22 enumerations of error.[1] We find that none of his enumerations has merit, and we affirm.

The record shows that at the time these crimes were committed, Davis was living with a girlfriend and her three children from a prior marriage.[2] The victim was his girlfriend's 11-year-old daughter. She testified that Davis molested her on two occasions while her mother was working. On one occasion, she and her brother and sister were riding home with Davis in his Jeep after visiting their mother. The victim was riding in the front seat with Davis, and her brother and sister were in the back seat. Davis took the victim's hand and placed

---

[1] A number of Davis's enumerations of error are duplicative, and we have combined them for review.

[2] Davis married after he and this girlfriend broke up, and at the time of trial he was married.

it inside his shorts on his penis. On another occasion, she was home with a stomach ache, and Davis called her into his bedroom, where he was under the covers. He told her to get into bed with him and instructed her to perform oral sex because her mother "didn't do it enough." She did so until "white stuff came out," and he threatened to kill her and her family if she told anyone. Shortly after that, while visiting her father in North Carolina, she told her stepmother of the molestation, and she was interviewed by a social worker from the local county social services agency.

Davis consented to take a polygraph examination, and he stipulated to the admissibility of the results. GBI Special Agent Paul Loggins, a polygraph expert, testified that the examination showed that Davis was not truthful when he denied touching or molesting the victim. The trial court also admitted evidence of several similar transactions, consisting of the testimony of other young girls that Davis forced them to engage in oral sex, had intercourse with them, or had conversations with them about sex.

1. Davis contends the trial court erred in failing to grant a continuance at three different points in the trial, based upon his incompetence to stand trial. We do not agree.

On the night before Davis's trial was scheduled to begin, he had a dispute with his wife and swallowed a bottle of prescription tranquilizers. He was taken to the hospital, where his stomach was pumped. The hospital notified the State that Davis might be released on the afternoon of trial, and at approximately 4:27 p.m. that afternoon, Davis was brought to court by the Sheriff's Department. The court questioned him and learned that he knew where he was and recognized the judge, the prosecutor, and his attorney, although he did not remember being brought to the court.

The trial began the following morning. Defense counsel renewed a motion for continuance he had previously made, and it was denied. In denying the motion, the judge placed on the record that he had conferred with Davis's physician, who stated that although Davis would need treatment for depression, she did not feel that anything prevented him from standing trial. Defense counsel stated his concern that chemicals from the ingested tranquilizers were still in Davis's system and would affect his ability to assist counsel. He noted that Davis appeared to be "visibly shaking." The court noted that he had seen Davis outside the courtroom and that Davis was not shaking at that time. The court ruled that since the chemicals had been "pumped out" and that Davis responded appropriately to questioning and appeared to be capable of standing trial, no continuance would be granted.

We find no error. In ruling on the motion for continuance, the trial court stated that the situation was of Davis's own making. We

held in *Yancey v. State*, 219 Ga. App. 116 (464 SE2d 245) (1995), that the trial court did not abuse its discretion in denying a continuance even though the defendant was completely absent from court, because the evidence indicated that the defendant voluntarily took enough medication "to rise to toxic levels in his blood thereby causing his hospitalization." Id. at 117. Similarly, in *Frazier v. State*, 257 Ga. 690, 695-696 (12) (362 SE2d 351) (1987), the defendant intentionally stockpiled Dilantin issued to him at the jail and took it all on the day before his trial was to start. In court, he appeared to pass out and was taken to the hospital for examination. His stomach was pumped, he returned to court the next day, and his attorney requested a continuance because the defendant still felt the effects of the overdose. The Supreme Court held that the denial of a continuance was not an abuse of discretion, given "[t]he length of time that had elapsed since appellant's intentional overdose, the doctor's evaluation and report, appellant's own coherent testimony, and the trial court's observations of the appellant that day and the day before." Id. at 696. Here, as in *Frazier*, all those factors support the trial court's conclusion that Davis was capable of proceeding.

2. For the reasons stated in Division 1, it was not error to allow the testimony of Sherry Treywick, the North Carolina social worker, to be preserved on videotape despite the defendant's absence and to be played for the jury at trial. Treywick was subpoenaed to appear on the morning trial was scheduled, and she appeared for trial in Georgia at considerable inconvenience. The prosecutor stated her testimony was essential, and Treywick testified that it would cause substantial hardship for her to remain overnight in Georgia because of an impending snowstorm and the fact that she had very young children for whom she had not made care arrangements. Although OCGA § 24-10-130 (e) provides that "not less than one day's notice" of the hearing on a motion to preserve testimony under that Code section must be given to the opposite party, we are persuaded that the trial court correctly found that Davis waived the requirement of notice by intentionally delaying the trial. It is well established that one cannot complain of a ruling that one's own conduct causes or helps bring about. See, e.g., *Herndon v. State*, 229 Ga. App. 457, 458 (4) (494 SE2d 262) (1997), overruled in part on other grounds, *Howard v. State*, 233 Ga. App. 724, 729 (7) (505 SE2d 768) (1998).

3. Davis also appears to complain that it was error to admit Treywick's testimony regarding a third act of molestation related to her by the victim, when the victim herself testified to only two incidents. Any conflict, however, does not render the testimony inadmissible but was for the jury to consider in determining the weight to give the testimony.

Davis also appears to argue that this testimony from Treywick

should have been excluded because it was not described in the indictment. It is true that Counts 1 and 2 of the indictment refer to two different occasions, and Counts 3, 4, and 5 specifically state they refer to the same occasion as Count 2 but a different occasion from Count 1. But Count 7 of the indictment, charging Davis with cruelty to children, does not specify the occasion or occasions on which the acts took place. This count simply states that at some time between January 1, 1995 and June 30, 1995, Davis caused the victim "cruel and excessive mental pain by committing at least one of the following acts: (a) causing her to place her hand upon his penis, (b) placing his penis into her mouth." Even if Treywick testified to a third occasion, therefore, it would not constitute a variance from the allegations in the indictment.

4. In four enumerations of error, Davis challenges the admissibility of the similar transaction evidence, arguing specifically that the testimony of two witnesses did not constitute evidence of similar transactions. We do not agree. Both witnesses testified that Davis, a substitute teacher, had inappropriate conversations with them when they were in middle school.[3]

It is true that these two witnesses did not testify that Davis touched them or had sex with them. But similar transactions need not be identical to be admissible. *Woods v. State*, 224 Ga. App. 52, 55 (3) (479 SE2d 414) (1996). The exception to the general rule of inadmissibility for similar transactions has been liberally extended in cases involving sexual offenses. And when sexual abuse of children is involved, sufficient similarity exists to make the evidence admissible regardless of the precise type of conduct involved. *Swift v. State*, 229 Ga. App. 772, 774-775 (2) (d) (495 SE2d 109) (1997). The State offered this evidence to show Davis's bent of mind and lustful disposition.[4] As such, it was admissible.

Davis also argues either that the trial court misconstrued the law regarding the introduction of similar transactions or that the law itself is unconstitutional. But he did not raise these arguments below.

---

[3] One witness testified only that he asked her to be his girlfriend. Another testified that they discussed his sex life, and a GBI agent testified that this witness told him that Davis propositioned her, telling her that "sex with his wife was good and it would be good with her, also."

[4] It appears that Davis is arguing that this evidence was not proper as evidence of "prior difficulties," either. In *Loggins v. State*, 260 Ga. 1 (388 SE2d 675) (1990), the Supreme Court held that USCR 31.1, governing notice of the State's intention to introduce evidence of similar transactions, applies as well to evidence that is introduced to show prior difficulties between the accused and the victim. (The Supreme Court has since reconsidered that rule, at least as to "prior difficulties" between the defendant and the victim in the charged crime.) *Wall v. State*, 269 Ga. 506, 507-509 (2) (500 SE2d 904) (1998). In this case, however, we find no mention of any such "prior difficulties" or any suggestion that the State introduced the evidence for that purpose.

He sought to exclude them only on the ground that they were not similar.

5. As to a third similar transaction witness, Davis contends either that the trial court misconstrued the rape shield law, OCGA § 24-2-3, or that the statute itself is unconstitutional. His contention concerns the testimony of a young woman who stated that she met Davis at a country dancing club when she was 15 years old and that eventually he brought her to his home, where they had sex. She was asked on direct examination how she met Davis, and she responded: "Through the Blue Rodeo. On Thursday nights is family night." On cross-examination, Davis's lawyer asked her: "Isn't it true that you go to the Blue Rodeo on more than just family night?" The trial court stopped him, saying: "Whoa." The prosecutor then objected, and the court cautioned defense counsel not to go into "character." This was not error. Trial counsel stated at the time, and appellate counsel repeats now, that the question was designed to show that the witness was lying when she testified that she went to the club only on family night. But the record shows, and the trial court correctly noted, that the witness did not say that she went to the club only on that night. Furthermore, the issue of the statute's constitutionality was not raised below or ruled on by the trial court, and it cannot be considered on appeal.[5] *Grice v. State*, 199 Ga. App. 829 (1) (406 SE2d 262) (1991).

6. Davis's former girlfriend testified that after she moved out of state, she came back to Georgia and stayed at Davis's trailer. The trial court asked her whether they were "still intimate," and she replied "not at that time." The questioning continued, and the district attorney asked if she had slept in the same bed with him. She responded that she had not; that "[h]e came back there and got in the bed with me." The court again interposed a question, asking her: "Well, you didn't run him out, did you?" The witness answered that she had told him "no," but he was "pretty forceful." Davis objected at that point and moved for a mistrial, which was denied.

After denying the mistrial, the trial court instructed the jury to disregard anything the witness said about this incident, and the questioning resumed. Davis did not renew the motion for mistrial after the court's curative instruction. Even assuming that the testimony was harmful, it is well established that to preserve any error for review, a motion for mistrial must be renewed after a curative instruction. *Maddox v. State*, 227 Ga. App. 602, 604 (2) (490 SE2d 174) (1997). Moreover, the grant or denial of a mistrial is within the

---

[5] We note, however, that the constitutionality of the rape shield statute was upheld by the Supreme Court before its amendment in 1989. *Harris v. State*, 257 Ga. 666 (362 SE2d 211) (1987).

discretion of the trial court, and when a curative instruction is given immediately, this court will not disturb the trial court's judgment denying the mistrial. *Mosier v. State*, 218 Ga. App. 586, 589-590 (4) (462 SE2d 643) (1995).

7. We find no evidence in the record that Davis's trial counsel rendered ineffective assistance, as urged by him. To prevail on such a claim, Davis must show both that his counsel's performance was deficient, and that but for that deficiency the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984). A strong presumption exists that trial counsel's performance was within the wide range of reasonable professional assistance and that challenged actions might be considered sound trial strategy. *Stephens v. State*, 265 Ga. 120, 121-122 (2) (453 SE2d 443) (1995). We need not "address specifically and individually each and every one" of the challenges enumerated by Davis. Id. at 122. They clearly refer to trial strategy decisions, and many were the result of the difficult trial situation Davis caused by his own conduct. The evidence clearly supports the trial court's ruling that Davis received effective assistance of counsel.

8. Davis's assertion that the cumulative effect of all these errors was harmful is without merit. "The cumulative error doctrine is not recognized in Georgia. [Cit.]" *Johnson v. State*, 236 Ga. App. 61, 66 (3) (e) (510 SE2d 918) (1999).

9. Davis contends that the sentences imposed were too harsh "under the circumstances," because he suffers from several chronic conditions and the state of his general health is poor. We will not review for error any sentences within the statutory limits. *Rehberger v. State*, 235 Ga. App. 827, 830 (4) (510 SE2d 594) (1998). The sentences imposed, 30 years for aggravated child molestation and 20 years for the remaining offenses, are within the statutory limits. See OCGA §§ 16-6-2 (b); 16-6-4 (b); 16-6-5 (b); 16-5-70 (c).

*Judgments affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED MAY 13, 1999 — CERT. APPLIED FOR.

*Barry E. Billington*, for appellant.

*Roger Queen, District Attorney, William B. Britt, Assistant District Attorney, Abernathy & Ballinger, Joe W. Hendricks, Jr.*, for appellee.