## S99A0489. HUNTLEY v. THE STATE.
(518 SE2d 890)

SEARS, Justice.

The appellant, Richard Huntley, was convicted of the murder of Herman Pitts, and sentenced to life in prison.[1] He appeals, raising numerous issues, including that he received ineffective assistance of trial counsel. We conclude that these issues present no ground for reversal, and we therefore affirm Huntley's conviction.

On November 24, 1996, the body of Herman Pitts was found in an abandoned building in Savannah. A pathologist testified that Pitts had abrasions and bruising on the forehead, face, nose, and neck; a laceration on the left side of his head caused by a blunt force injury; a fractured jaw; and a forcible injury to the chest wall. The

---

[1] The crimes occurred on November 24, 1996. Huntley was indicted on December 3, 1997. On December 18, 1997, the jury found Huntley guilty of robbery, aggravated assault, and felony murder (with aggravated assault as the underlying felony). That same day, the trial court merged the robbery and aggravated assault convictions with the conviction for felony murder, and sentenced Huntley to life in prison for felony murder. On December 30, 1997, Huntley filed a motion for new trial. On February 5 and 18, 1998, the court reporter certified the trial transcript, and on July 20, 1998, Huntley filed an amended motion for new trial. The trial court denied Huntley's motion for new trial, as amended, on October 27, 1998, and on November 4, 1998, Huntley filed his notice of appeal. The appeal was docketed in this Court on December 29, 1998, and was submitted for decision on briefs on February 22, 1999.

pathologist stated that Pitts died from strangulation and from blunt force injury to the head which caused cerebral bleeding.

Bernard Owens, who had known Huntley about three months at the time of the crime, testified that on November 24, Huntley sold him a watch that Huntley said he had gotten from a "drunk guy." Owens also added that the next day Huntley told him that the police had questioned him about a murder, and that Huntley told Owens that he had not meant to hit the man "that hard." Owens testified that he realized Huntley was talking about a homeless man whose body had been found, and Owens contacted police and agreed to wear a wire and initiate another conversation with Huntley. In that conversation, Huntley indicated that he did not mean to hit the victim "that hard"; that he had hit him with a brick; and that he took the victim's watch and $6.50.

Based upon Owens's information, Huntley was arrested. He gave a statement to police in which he initially stated that he hit the victim on the side of the head with his hand, but later stated that he hit the victim with a brick. Huntley also initially denied stealing the victim's watch, but subsequently admitted that he took the watch and sold it for $10 worth of drugs.

While in jail, Huntley approached inmate Charles Washington, a "jail house" lawyer, and sought help with his case. Washington testified that in discussing the case with Huntley, Washington realized that he knew the victim. Washington added that Huntley told him that he had gotten into a wrestling match with the victim, and that during the course of the scuffle, the victim's watch fell off. Huntley took the watch and told the victim he would return it later. According to Washington, Huntley stated that later that day, he saw the victim and asked the victim for some money. When the victim refused, Huntley grabbed him by the neck and put him in a sleeper hold. Huntley told Washington that he did not mean to kill the victim, but just to put him to sleep so that he could take his money.

At trial, Huntley testified that he and the victim began fighting over the victim's use of a racial epithet. According to Huntley, in the course of fighting, Huntley struck the victim first with his fist and then with a brick. He also admitted that he took the victim's watch. Huntley, however, maintained that he did not kill the victim because the victim was alive when he left him.

1. In his third enumeration of error, Huntley contends that the evidence is insufficient to support his conviction. However, having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Huntley guilty

of felony murder beyond a reasonable doubt.[2]

2. Huntley was indicted for malice murder and two counts of felony murder, with armed robbery and aggravated assault serving as the underlying felonies for the felony murder counts. All three of these counts of the indictment alleged that Huntley caused the death of the victim "by striking [the victim] in the head with a brick-like object and by strangulation." In its charge to the jury, the trial court instructed the jury that it could find Huntley guilty if it found that he caused the victim's death by strangulation, by beating, or by both.

Relying on *Dukes v. State*,[3] Huntley contends in his first and eighth enumerations of error that the trial court erred in this charge, in that it permitted the jury to convict him of a crime in a manner not set forth in the indictment. *Dukes* is based upon the due process principle that defendants are entitled to notice "of the charges brought against them. This notice enables them to present their defense without surprise and to protect them against a second prosecution for the same offense."[4] Here, because the indictment charged that Huntley caused the victim's death by striking him and by strangling him, Huntley was on notice that he needed to defend against proof that he caused the victim's death by both of these methods. The trial court's charge thus did not require Huntley to defend against a cause of death that was not alleged in the indictment. Moreover, the trial court's charge did not operate to subject Huntley to a later prosecution for the same offense. Accordingly, we conclude that this contention is without merit.[5]

3. In his second enumeration of error, Huntley contends that the jury's verdict of guilty on the felony murder count for which aggravated assault served as the underlying felony is mutually exclusive of its verdicts of not guilty both on the malice murder count of the indictment and on the felony murder count for which armed robbery served as the underlying murder. Huntley bases this contention upon the fact that all three counts of the indictment for the foregoing offenses alleged the same cause of death. Huntley, however, errs in contending that the verdicts are mutually exclusive. The doctrine of mutually exclusive verdicts applies only where the jury returns multiple convictions as to crimes which are mutually exclusive of each other.[6] That doctrine does not apply where, as here, there is a verdict of guilty and another of not guilty. Moreover, to the extent that Hunt-

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] 265 Ga. 422 (457 SE2d 556) (1995).

[4] Id. at 422-423.

[5] See *Casillas v. State*, 267 Ga. 541, 542 (1) (480 SE2d 571) (1997); *Lubiano v. State*, 192 Ga. App. 272, 273-274 (1) (a) (384 SE2d 410) (1989).

[6] *Dumas v. State* 266 Ga. 797, 799-800 (2) (471 SE2d 508) (1996).

ley is contending that the verdicts are inconsistent, the contention has no merit as this State has abolished the inconsistent verdict rule.[7]

4. In his fourth enumeration of error, Huntley contends that this Court should set aside his felony murder conviction by adopting the merger rule and precluding the use of an aggravated assault upon the victim to serve as the underlying felony for felony murder. We have, however, consistently resolved this issue adversely to Huntley's contention, and decline to depart from those holdings in this case.[8]

5. In his fifth enumeration of error, Huntley contends that the trial court erred in allowing the state to illicit testimony regarding the ultimate issue the jury was impaneled to try, and that he is therefore entitled to a new trial.

During the prosecutor's redirect examination of the detective who interviewed Huntley, the prosecutor asked the detective whether Huntley lied to the detective during the interview. The detective responded that Huntley had lied. Huntley then objected that defense counsel had not inquired about the detective's interview of Huntley on cross-examination, and that the prosecutor was not entitled to raise this issue on redirect examination. The trial court sustained the objection, noting that the jury had to decide the credibility of witnesses.

On appeal, Huntley contends that the detective's answer amounted to an improper comment on Huntley's veracity, an ultimate issue for the jury. Huntley, however, did not raise this objection at trial, and is therefore procedurally barred from raising the issue on appeal.[9] Moreover, we conclude that, even if any error occurred, it is highly probable that the detective's answer to the prosecutor's question did not contribute to the verdict, and that a new trial is therefore not warranted.[10]

6. In his sixth enumeration of error, Huntley contends that the trial court erred by allowing the prosecutor to improperly place his character in issue during the prosecutor's cross-examination of Huntley. Huntley, however, did not object to the prosecutor's questions at trial, and is therefore barred from raising this issue on appeal.[11]

7. Huntley contends in his seventh enumeration of error that, in denying his motion for new trial, the trial court erred in ruling

---

[7] *Milam v. State*, 255 Ga. 560, 562 (341 SE2d 216) (1986); *Dumas*, 266 Ga. at 799.

[8] *Franklin v. State*, 268 Ga. 865, 867 (4) (494 SE2d 327) (1998); *Lee v. State*, 265 Ga. 112, 114-115 (5) (454 SE2d 761) (1995); *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992).

[9] *Williams v. State*, 262 Ga. 422, 424 (6) (420 SE2d 301) (1992).

[10] *Barrett v. State*, 263 Ga. 533, 535 (2) (436 SE2d 480) (1993); *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976).

[11] *Pye v. State*, 269 Ga. 779, 784-785 (8) (505 SE2d 4) (1998).

against his claim that he received ineffective assistance of trial counsel.[12] On appeal, Huntley contends that his trial counsel failed to spend adequate time with him in preparing for the case, and failed to call several witnesses to testify that would have aided his defense. As for these witnesses, Huntley testified at the motion for new trial hearing that he gave trial counsel a list of their names.

In denying Huntley's motion for new trial, the trial court found that trial counsel had spent adequate time with Huntley preparing his case; that trial counsel had been diligent in attempting to locate the witnesses, many of whom were homeless and could not be located; and that several of the witnesses that Huntley wanted to testify on his behalf would have placed Huntley's character in issue. In the latter regard, trial counsel testified at the motion for new trial hearing that he did not call character witnesses to testify because Huntley had three prior convictions that trial counsel did not want the jury to learn about. Our review of the record leads us to conclude the trial court did not err in ruling that Huntley failed to prove either that trial counsel's performance was deficient or that trial counsel's performance prejudiced Huntley's defense within the meaning of *Strickland v. Washington*.[13]

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 14, 1999.

*C. Jackson Burch,* for appellant.

*Spencer Lawton, Jr., District Attorney, Lori L. Canfield, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.

---

[12] After his conviction, Huntley obtained new appellate counsel, and filed a motion for new trial, contending, among other things, that he received ineffective assistance of counsel at trial.

[13] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). See *Harris v. State,* 268 Ga. 412 (490 SE2d 96) (1997).