A99A1374. CASTRO v. THE STATE.
(527 SE2d 12)

SMITH, Judge.

Maria Castro, along with her husband, Jose Castro, was convicted of the offenses of aggravated child molestation and child molestation involving their three-year-old daughter. Maria Castro filed a motion for new trial, which was denied. In this appeal, Castro contends that the trial court erred by refusing to grant her motion for directed verdict of acquittal on the aggravated child molestation count and erred by refusing to grant a mistrial after a witness improperly commented that she believed the victim was telling the truth.[1] We find no merit to either assertion. Although one of the State's witnesses improperly uttered a gratuitous remark about the victim's credibility, we do not find that the trial court abused its discretion in resolving the matter by employing appropriate curative instructions.

1. Castro contends that the trial court erred in denying her motion for directed verdict on the count for aggravated child molestation. We disagree.

Construed to uphold the jury's verdict, evidence showed that both Castro and her husband, Jose, sexually victimized their three-year-old daughter. After their daughter mentioned certain sexual activities engaged in by and with her parents to her babysitters, they contacted authorities, and the Floyd County Department of Family &

---

[1] Jose Castro is not a party to this appeal.

Children Services instituted an immediate investigation. Dr. Susan Campbell, a clinical psychologist affiliated with Harbor House, interviewed the victim the day after DFCS received the initial report of the sexual abuse allegedly perpetrated by the child's parents. Dr. Campbell, an expert in the field of child psychology and forensic interviews of child abuse victims, spoke with the child.[2] Campbell's interview of the victim was preserved on a videotape that the jury was permitted to view. Dr. Campbell testified that "she described very easily sexual behaviors that had occurred between herself and her parents and between her parents that are things that she would not have knowledge about if she had not experienced them herself." According to Dr. Campbell, "[this child] actually put her mouth on the genitalia of the dolls, which I would say in less than five cases in the — of the 450 that we've seen at Harbor House is something that I've seen children do." During this initial interview, the victim indicated that she had taken her mother's underwear off and kissed her on the buttocks, that she had kissed her mother in her vaginal area, and that her mother had kissed her in her crotch area. Using anatomical dolls, the victim reenacted placing her mouth on her mother's vaginal area.

Eva Lovell, a clinical psychologist, provided counseling to the victim through more than 22 therapy sessions. The victim repeatedly and consistently described acts of sexual touching involving both her parents to Lovell during therapy.[3] Lovell's supervisor, Dr. William Blackerby, testified that the victim's claims against her parents had been consistent "all the way along." Lovell testified that the child's explicit sexual knowledge and behavior exceeded 99.999 percent of typical children of her age.

The victim's foster mother confirmed that the child acted out sexually and behaved in a manner inappropriate for her age. According to the foster mother, she observed the victim repeatedly enacting scenes with dolls indicating intercourse and oral sex.

About six weeks after the preliminary interview, Dr. Campbell again met with the victim. Dr. Campbell's decision to conduct a second interview was prompted by remarks made by the victim after she was in foster care that seemed to possibly implicate two additional perpetrators. The purpose of the second interview was solely to investigate whether other persons may have also sexually abused the child. Dr. Campbell felt that she did not obtain reliable information

---

[2] Dr. Campbell explained that "[a] forensic interview is focused on gathering data." Dr. Campbell had personally conducted over 250 such interviews and participated in over 100 others.

[3] Sara Rogers, M.D., a pediatrician who examined the victim, testified that the child had sustained a severe penetrating injury to her hymen, caused by the insertion of an object.

concerning abuse by anyone other than the parents. Dr. Campbell testified that the victim's accounts of the aberrant sexual misconduct by her parents remained consistent over time. According to Dr. Campbell, the victim never retracted anything she had previously said about either of her parents. In Dr. Campbell's view, the victim "absolutely" exhibited symptoms and behaviors of a child who has been sexually abused. This evidence was sufficient within the meaning of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) to sustain Castro's conviction for aggravated child molestation. See *Johnson v. State*, 231 Ga. App. 823 (1) (499 SE2d 145) (1998) (a victim's testimony alone can sustain a conviction). In light of the overwhelming evidence of Castro's guilt, the trial court properly denied the motion for directed verdict. *Cantrell v. State*, 230 Ga. App. 693, 694-695 (498 SE2d 90) (1998).

2. Castro asserts that the trial court erroneously refused to grant her motion for mistrial after the State's expert improperly bolstered the credibility of the victim.

This witness, Lovell, an expert in clinical psychology and therapy of sexually abused children, treated the victim. She testified concerning her observations of the victim during play therapy, describing the victim as showing much aggression and violence, and explaining how the victim's behavior indicated that she had experienced sexual trauma. She also testified that the victim reported sexual abuse by her parents on more than one occasion.

While on direct, Lovell was asked a proper question: "Do you find it significant that this child consistently, over a year's time, has continued to name her mother and father as abusers?" At this point, Lovell supplied an unresponsive, impermissible answer: "Yes, I believe that she's telling the truth." Both Castros immediately moved for a mistrial, and a bench conference ensued. The trial court refused to grant a mistrial, electing instead to immediately give the jury this curative instruction:

Members of the jury, we have different professionals come in, and they have been qualified as an expert. The question of whether or not someone believes the child — is it may be important to somebody in the treating of the child, but there is no way that the law is going to permit any expert to come in, no matter how much training, and — and testify to the truthfulness of what the child is saying. That is the ultimate that the jury must decide, and it cannot be decided by — by an expert, and there has been a motion made, and I am excluding that from your consideration, the witness's last testimony — statement that she believes the child.

After so instructing the jury, the court then polled the jury to ensure that no prejudice had occurred. The court continued:

Now, it's so important that you be able to separate your decisions from what this witness told you in response to the last — her last response that I need to ask you a question. Can all of you set aside the witness's last statement that she believes the child and, then, make your own decisions as to whether or not you believe the child? If you cannot do that, please raise your hand.

After no juror responded, both defendants renewed their motions for a mistrial. The court then denied the motions and cautioned the witness as follows:

THE COURT: Doctor, I'm not trying to question you — .
THE WITNESS: Yes, sir.
THE COURT: [B]ut there is a line of demarcation between what you're able to do for this jury by way of helping them — .
THE WITNESS: Uh-huh (affirmative).
THE COURT: [A]nd what you can do by — and — and — and you're prohibited from telling the jury what your opinion is for their purpose of opinion.

As the State concedes, Lovell's unresponsive comment that she believed the child was improper. Witness credibility lies exclusively within the province of the jury. OCGA § 24-9-80. A witness's credibility simply cannot be bolstered by the opinion of another that the witness is telling the truth. See, e.g., *Buice v. State*, 239 Ga. App. 52, 55-56 (2) (520 SE2d 258) (1999); *Hilliard v. State*, 226 Ga. App. 478, 481-482 (487 SE2d 81) (1997); *Lagana v. State*, 219 Ga. App. 220, 221 (1) (464 SE2d 625) (1995).

But in these circumstances, a mistrial was not mandated. The grant or denial of a motion for mistrial lies within the sound discretion of the trial court, and this discretion will not be disturbed unless manifestly abused. *Mosier v. State*, 218 Ga. App. 586, 589-590 (4) (462 SE2d 643) (1995); see *Davis v. State*, 238 Ga. App. 84, 88-89 (6) (517 SE2d 808) (1999). Unless it is obvious that a mistrial is essential to the preservation of the right to a fair trial, appellate courts will not interfere with the exercise of the court's discretion. *Jones v. State*, 226 Ga. App. 721, 725 (2) (487 SE2d 618) (1997).

Here, recognizing the problem with this impermissible bolstering, the trial court took immediate remedial action to rectify the situation. The court provided a strongly worded curative instruction, polled the jury, then advised the witness to avoid giving her opinion. *Jones*, supra (by providing cautionary instructions and polling the

jury, the trial court did not abuse its discretion in denying motion for mistrial); see *Davis*, supra; *English v. State*, 202 Ga. App. 751, 755 (5) (415 SE2d 659) (1992). Given the court's curative efforts, the nature of the unresponsive comment, and the lack of apparent prejudice, we find no abuse of discretion in the denial of the motion for mistrial. *James v. State*, 270 Ga. 675, 677 (4) (513 SE2d 207) (1999).

Moreover, here, as in *Stamey v. State*, 194 Ga. App. 305 (390 SE2d 409) (1990), sufficient other evidence implicated the defendant, permitting us to conclude that it is highly probable that the erroneous opinion testimony did not contribute to the verdict. See *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976) (even when error is shown, reversal is not warranted when it is highly probable that the error did not contribute to the jury's verdict). In *Stamey*, supra, we concluded that improper opinion testimony concerning the victim's credibility did not usurp the jury's role because that expert also "exhaustively explained the basis for determining the child's credibility." Id. at 306 (1) (a). Here, the jury heard Dr. Campbell explain the characteristics of the child sexual abuse accommodation syndrome which includes acting out sexually and pretending to do sex acts, viewed two videotapes of the victim explicitly depicting sexual activities with her parents in which she was an active participant, and heard testimony from several witnesses describing the victim's bizarre sexual behavior. From this evidence, the jury could determine for itself whether the victim's accounts and conduct appeared credible. Even if any error occurred, we nevertheless conclude that it is highly probable that the therapist's inappropriate response did not contribute to the verdict. *Huntley v. State*, 271 Ga. 227, 230 (5) (518 SE2d 890) (1999). Since the jury had abundant other evidence from which it could judge the victim's credibility, reversal is not warranted. *Berry v. State*, 235 Ga. App. 35, 38 (2) (508 SE2d 435) (1998); see *Dickerson v. State*, 207 Ga. App. 241, 242 (427 SE2d 591) (1993) (harmless error analysis applied despite impermissible bolstering of victim's credibility).

For two reasons, a response to the special concurrence is required. Curative instructions are not fungible items. Their content and quality always matter. Whether curative instructions are sufficient to cure the harm must always be determined under the circumstances of each case. *Wilson v. State*, 268 Ga. 527, 528 (2) (491 SE2d 47) (1997); *Maddox v. State*, 227 Ga. App. 602, 603 (2) (490 SE2d 174) (1997). It simply cannot be said that whenever a trial court provides curative instructions and also polls the jury that those two combined actions are always "legally sufficient" to foreclose all appellate consideration as to whether the trial court properly exercised its discretion. On the contrary, as noted in *Jones*, supra, when the trial court gives cautionary instructions and also polls the jury, the issue

remains whether these measures preserved the right to a fair trial. Id.

The cases relied upon by the special concurrence do not hold otherwise. In *Garcia v. State*, 207 Ga. App. 653, 658 (428 SE2d 666) (1993), the defendant elected not to renew his motion for a mistrial after the trial court gave curative instructions *and* polled the jury. Id. at 657. This court nevertheless explored whether there was a reasonable probability that the improper comment changed the result of the trial. Id. at 658. In *Smith v. State*, 267 Ga. 372, 374 (4) (477 SE2d 827) (1996), the trial court did not poll the jury but merely limited the jury's consideration of the evidence.

The evidence that this child was, in fact, the victim of horrendous sexual abuse was absolutely overwhelming. The evidence incriminating Maria Castro as a perpetrator of sexual abuse was also overwhelming. Indeed, the last sentence of Division 1 of this opinion says just that. But it would be inappropriate and fundamentally unfair to consider evidence not relating to defendant Maria Castro in reviewing her appeal. Yet much of the evidence cited by the special concurrence may have pertained only to Jose Castro and *not* necessarily to Maria Castro. In addition, there was some evidence, albeit conflicting, that others may also have sexually abused this child.

*Judgment affirmed. Pope, P. J., concurs. Eldridge, J., concurs specially.*

ELDRIDGE, Judge, concurring specially in judgment only.

I cannot concur fully in the majority opinion for the following reasons:

1. In Division 2, I do not believe that the majority's additional analysis regarding "the nature of [Lovell's] unresponsive comment and the lack of apparent prejudice" is required by law. I find that, after the trial court's thorough curative instructions, the poll of the jury and its response (or lack thereof) was legally sufficient to determine that the trial court did not err in denying Castro's motion for mistrial.[4]

> [T]he trial court's poll of the jury reflects that no juror believed he or she could not follow the curative instruction. Moreover, qualified jurors, under oath, are presumed in the absence of clear contrary evidence to follow the procedural directives of and to respond honestly to questions of the trial judge.

---

[4] In the case cited by the majority for the proposition that further analysis is necessary, the trial court issued curative instructions, alone, and did not poll the jury to determine the effect of the improper testimony. *James v. State*, 270 Ga. 675, 677 (4) (513 SE2d 207) (1999).

*Garcia v. State*, 207 Ga. App. 653, 658 (428 SE2d 666) (1993); *Smith v. State*, 267 Ga. 372, 374 (3) (477 SE2d 827) (1996). Accordingly, the trial court's denial of the motion for mistrial was not error.[5]

2. Also, contrary to the majority, I would not characterize the evidence in this case as "sufficient" — but overwhelming. Three-year-old J. C. was able to sustain for over a year a consistent version of sexual abuse by the defendants, which was a "highly unlikely" feat according to forensic psychologist Susan Campbell; *three* different psychologists[6] testified that J. C.'s outcry fit within the parameters of well-recognized credibility standards; outcry witnesses repeated the same version of sexual abuse by her parents as told to them by J. C.; in two video tapes, J. C. repeated her statements about her parents' abuse; evidence of a "child sexual behavior checklist" was introduced showing J. C. had more sexual knowledge and acted more sexually that 99.999 percent of similar children; statements from J. C.'s father (defendant Jose Castro) were introduced that he "noticed [J. C.] awake" and watching as the defendants had sex, and "he had noticed her watching them have sex on at least one occasion and that perhaps she had seen them other times also"; J. C.'s outcry was further corroborated by Dr. Sara Rogers who testified that a physical examination of three-year-old J. C. showed severe vaginal penetration that had completely removed the hymenal membrane.

Clearly there was overwhelming evidence by which the jury could judge the victim's credibility, notwithstanding Lovell's single improper statement — a statement the jury confirmed it would not credit. Further, contrary to the majority's position, it is not "inappropriate and fundamentally unfair" to consider *all* of the evidence against Maria Castro, as she is a party to any crimes committed by Jose Castro and vice versa, and the trial court charged on parties to a crime. OCGA § 16-2-21. Accordingly, it is " 'highly probable that [Lovell's statement] did not contribute to the judgment.' " *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976); *Huntley v. State*, 271 Ga. 227, 230 (5) (518 SE2d 890) (1999).

DECIDED DECEMBER 3, 1999 —
RECONSIDERATION DENIED DECEMBER 16, 1999 —

---

[5] Accord *Dennis v. State*, 263 Ga. 257, 258 (2) (430 SE2d 742) (1993); *Griffin v. State*, 221 Ga. App. 138, 140 (3) (470 SE2d 744) (1996); *Touchton v. State*, 210 Ga. App. 700 (437 SE2d 370) (1993); *McDaniel v. State*, 204 Ga. App. 753, 754 (2) (420 SE2d 636) (1992); *Harris v. State*, 202 Ga. App. 618, 620 (414 SE2d 919) (1992); *Truitt v. State*, 168 Ga. App. 616 (1) (309 SE2d 895) (1983).

[6] Clinical psychologist Eva Lovell, forensic psychologist Campbell, and neuropsychologist William Blackerby.

*James C. Wyatt*, for appellant.

*Tambra P. Colston, District Attorney, Fred R. Simpson, C. Stephen Cox, Assistant District Attorneys*, for appellee.