### A04A0872. SIDWELL v. THE STATE.
(603 SE2d 467)

MIKELL, Judge.

Stephen Sidwell appeals from the denial of his motion for new trial following his 1993 conviction on two counts of aggravated assault.[1] He contends that the trial court erred by admitting evidence of his prior conviction of aggravated assault as a similar transaction and by admitting certain testimony as part of the res gestae. We affirm.

Viewed in the light most favorable to support the verdict, the evidence adduced at trial shows that at about 6:00 p.m. on January 3, 1992, one of the two victims, Jimmy Strickland, approached a group of men standing outside his apartment and asked them to take their drug-dealing business somewhere else. An altercation ensued. Strickland stabbed one man, who was later identified as James Vincent, with a pocket knife, then pushed him over an embankment. Vincent jumped up and said, "you dead, you dead," and ran down the street. A witness testified that a third man summoned Sidwell, who considered Vincent a brother.

Meanwhile, Strickland testified that he started to follow Vincent, but his sister, Betty Walker, called him back. Strickland then went to the store to buy beer. When he returned, Walker informed him that Sidwell, whom Strickland knew as "High Roller," had come by the apartment looking for him. Walker's husband asked Strickland to leave, so Strickland went outside and walked around. When he returned, Sidwell was standing in front of the apartment, talking to Walker. Sidwell and Strickland began to argue. Fearing for his life, Strickland then went into his apartment, shut the door, and called 911. While he was speaking to the 911 operator, Sidwell kicked in the door. Strickland grabbed a knife, and Sidwell retreated into the hallway. According to Strickland, Sidwell twice stated that it was "over with" and that he was going to forget the incident. Strickland

---

[1] Sidwell was sentenced on February 24, 1993. On March 4, 2002, the trial court granted his motion for permission to file an out-of-time appeal. The court denied his amended motion for new trial on October 13, 2003. Sidwell filed a notice of appeal on October 27, 2003.

turned to his sister. Then Sidwell said "f--k this shit" and started firing his weapon. Strickland started running, but Sidwell shot him eight times. He took five bullets in his back and three in his legs. Walker was hit once.

Prior to trial, the state filed notice of its intent to introduce into evidence Sidwell's 1990 guilty plea to aggravated assault as a similar transaction. The trial court held a hearing pursuant to Uniform Superior Court Rule 31.3 (B) and ruled the evidence admissible to show Sidwell's bent of mind. Thereafter, the victim of the prior crime testified that on September 24, 1989, while he was surveying an abandoned apartment complex in Fulton County on behalf of his employer, who intended to put in a bid to remodel the complex, Sidwell approached him and asked whether he was the "f--king police." The victim said "no." Sidwell then took a gun from behind his back and struck the victim with it twice in the face.

1. Sidwell challenges the admission of evidence of the prior crime, arguing that it was too factually dissimilar from the charged offenses to satisfy the test set out in *Williams v. State*.[2] We disagree.

In *Williams*, the Supreme Court held that the state must make three affirmative showings before evidence of an independent offense may be admitted: (1) that the evidence is being introduced for a permissible purpose, such as illustrating the defendant's identity, intent, motive, and the like; (2) that the defendant committed the independent offense; and (3) that sufficient similarity exists between the transaction and the crime for which the accused is on trial, such that proof of the former tends to prove the latter.[3]

In this case, Sidwell challenges only the finding as to the third showing. However, because the degree of similarity which the state must prove depends in part upon the purpose for which the evidence is introduced, we shall discuss the first prong of the *Williams* test as well.

> [I]t is permissible for the State to introduce a similar crime precisely to show that the accused has a propensity for initiating and continuing unprovoked violent encounters. This falls into the category of showing malice, intent, motive, course of conduct, and bent of mind. Thus, a prior unprovoked use of a gun as a threat may show the accused's temper and his propensity to settle disagreements with a gun, and particularly to act violently and impulsively to disappointment, jealousy or misunderstanding and to resort to the threat or

---

[2] 261 Ga. 640 (409 SE2d 649) (1991).
[3] Id. at 642 (2) (b).

use of firearms with little or no provocation.[4]

In the case at bar, the prior offense involved the unprovoked use of a gun to beat a man based on a misperception that the man was an undercover police officer. This showed Sidwell's propensity to react violently and impulsively to misunderstanding. It helped to illustrate his bent of mind in the current case, which similarly involved a violent reaction to a perceived threat. It is precisely for this reason that,

> [w]hen similar transaction evidence is being introduced to prove motive, intent, or bent of mind, it requires a lesser degree of similarity to meet the test of admissibility than when such evidence is being introduced to prove identity. Similar transaction evidence can be introduced to prove [bent of mind] when there exists some logical connection between the similar transaction evidence and the charged offense[s] so that the similar transaction evidence tends to establish the charged offense[s].[5]

Here, there was a logical connection between the offenses in that all three involved aggravated assault with the use of a gun. Moreover, all three crimes were committed in apartment complexes in Fulton County, and the jury could infer from the prior crime that Sidwell resorted to violence to protect his territory. Accordingly, the trial court did not abuse its discretion in admitting the similar transaction evidence.

2. In his second enumeration of error, Sidwell contends that the trial court erred in allowing Walker to testify to her brother's statements recounting his conversation with Vincent as part of the res gestae. Again, we disagree.

OCGA § 24-3-3 provides that "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." The admissibility of declarations as part of the res gestae is left to the sound discretion of the trial court.[6]

The trial court did not abuse its discretion in this case. Walker testified that when she saw her brother immediately after his altercation with Vincent, Strickland said he "was going to try to cut the guy

---

[4] (Footnotes and punctuation omitted.) *Davis v. State*, 244 Ga. App. 708, 712 (3) (536 SE2d 596) (2000).

[5] (Citation and punctuation omitted.) *Jones v. State*, 226 Ga. App. 721, 723 (1) (487 SE2d 618) (1997).

[6] *Wallace v. State*, 151 Ga. App. 171, 173 (259 SE2d 172) (1979).

off because he knew he was going down to High Roller's." Walker was unaware at that point that Strickland had stabbed Vincent. As Walker headed back toward her apartment, she saw Sidwell coming out of her building. They had a brief conversation, after which Sidwell got into a vehicle and left. Walker went into her building and saw her brother coming up the back steps, so she asked him what had happened. Walker then testified that Strickland told her that Vincent and another man, Carl, were near their front door, that Strickland told them to get away, and that Vincent said if Strickland had a problem with it, he should talk to Sidwell. Sidwell objected to admission of this testimony.

Sidwell alleges that the statements to which he objected were not admissible as part of the res gestae because they were made by a third party, not Sidwell. However, admissibility under OCGA § 24-3-3 does not depend upon the speaker.[7] Rather, in order to be admissible as part of the res gestae, declarations "must be contemporaneous with the main fact, but need not be precisely concurrent in point of time; it is sufficient if such declarations spring out of the transaction, if they elucidate it, if voluntary and if made at such time as reasonably to exclude the idea of design."[8] Here, the declarations admitted in evidence were made during the time between the precipitating event and the shootings and served to explain the sequence of events leading to the crimes. Therefore, the declarations were admissible in evidence as part of the res gestae.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED AUGUST 10, 2004.

*Jennifer R. Kiser*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney*, for appellee.

---

[7] See, e.g., *Wilson v. State*, 158 Ga. App. 174, 176 (8) (279 SE2d 345) (1981); *McGee v. State*, 121 Ga. App. 221, 222 (1) (173 SE2d 427) (1970).

[8] (Punctuation and footnote omitted.) *Lovelace v. State*, 262 Ga. App. 690, 692 (2) (586 SE2d 386) (2003).